# Richmond.

Low Moor Iron Company v. La Bianca's Administrator.

November 22, 1906.

Absent, Buchanan, J.

1. DEATH BY WRONGFUL ACT—*Non-Resident Alien Beneficiaries.*—The action for death by the wrongful act or neglect of another given by Code, section 2902, may be maintained for the benefit of alien relatives resident in a foreign country, although they are not expressly named in the statute. The language is general, and, on principle, includes non-resident aliens as well as citizens or residents.

2. MASTER AND SERVANT—*Unsafe Place—Warning.*—It is the duty of the master to give his servants warning of all dangers to which they will be exposed of which he is or ought to be aware, except such as they should, in the exercise of ordinary care, have foreseen as necessarily incident to the business, in the natural and ordinary course of affairs, or of which they have had an opportunity to inform themselves in the course of their employment.

3. MASTER AND SERVANT—*Unsafe Place—Warning—Boss of Gang as a Vice-principal.*—Ordinarily the foreman or boss of a gang of hands employed in executing the master's orders is a mere fellowservant with the other members of the gang, but if he is discharging a non-assignable duty of the master he is to that extent a vice-principal. One of these non-assignable duties is to exercise ordinary care to provide a reasonably safe place in which the servant is to work. If a place is dangerous, and that fact is or should be known to the master, it is his duty to inform the servant of it, and, in the absence of an official of higher grade, this duty devolves upon the foreman of the gang as a vice-principal.

4. INSTRUCTIONS—*Conflict—Different Views of Case.*—Instructions are not conflicting which simply present different views of a case, each of which is supported by evidence, and this court will not set aside a verdict rendered under such instructions which is amply sustained by the evidence and in accord with one of such views.

Error to a judgment of the Circuit Court of Craig county in an action of trespass on the case. Judgment for the plain-c tiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*James W. Marshall* and *R. L. Parrish,* for the plaintiff in error.

*Gordon, Paxton* and *G. W. Layman,* for the defendant in error.

Harrison, J., delivered the opinion of the Court.

This action was brought to recover damages of the defendant company for the alleged negligent killing of the plaintiff's intestate. At the time of the accident the defendant was engaged in mining iron ore, and converting or manufacturing the same into pig iron. The plaintiff's intestate was an employee of the defendant, mining ore, as a common laborer, at its Fenwick mines in Craig county. There was a verdict and judgment in favor of the plaintiff for $2,000, of which $500 was allotted by the jury to the widow of the deceased, and $1,500 to his child. This judgment, at the instance of the defendant, is now before us for review.

It appears from the record that the deceased was a resident alien, and that his widow and infant son were residents of Raccuja, Sicily, and subjects of the King of Italy. The question raised by the first assignment of error is whether this action can be maintained for the benefit of the widow and son under sections 2902, *et seq.,* of Virginia Code, 1904.

In the case of *Pocahontas Collieries Co.* v. *Rukas' Admr.,* 104 Va. 278, 51 S. E. 449, it was decided that the action could

be maintained for the wrongful death of a resident alien, for the benefit of his resident alien widow and children, residing in another state. The question now before us, where the alien beneficiaries reside in a foreign country, was discussed in that case, with citation of authority on both sides, but was not decided. The investigation of the cases then made led Judge Whittle to remark that "the weight of authority in this country, however, maintains the right even of non-resident alien relatives of the deceased to receive the benefit of these statutes."

Further investigation affords abundant proof of the accuracy of this statement. The earlier cases, both in this country and in England, denied the benefit of these statutes to non-resident aliens, but more recent judicial utterance is practically united in favor of their right to the benefit of such statutes.

In the case of *Mulhall* v. *Fallon,* 176 Mass 266, 57 N. E. 386, 54 L. R. A. 934, 79 Am. St. Rep. 309, Holmes, C. J., in delivering the opinion of the court, observes: "One or two cases may be found where a general grant of a right of action for wrongfully causing death has been held to confer no rights upon non-resident aliens. . . . On the other hand, in several states the right of the non-resident to sue is treated as too clear to need extended argument." Citing *Philpott* v. *Missouri Pac. R. Co.,* 85 Mo. 164; *Chesapeake, &c., Co.* v. *Higgins,* 85 Tenn. 620, 4 S. W. 47; *Augusta Ry. Co.* v. *Glover,* 92 Ga. 132, 18 S. E. 406; *Luke* v. *Calhoun County,* 52 Ala. 115.

This case establishes the right of non-resident aliens to the benefit of the Massachusetts wrongful death statute, which is similar to our own. The most recent cases all follow the Massachusetts rule. *Kellyville Coal Co.* v. *Petraytis,* 195 Ill. 215, 63 N. E. 94, 88 Am. St. Rep. 191; *Szymanski* v. *Blumenthal* (Del.), 52 Atl. 347; *Reulund* v. *Commodore Mining Co.,* 89 Minn. 41, 93 N. W. 1057, 99 Am. St. Rep. 534; *Bouthron* v. *Fenix Light & Fuel Co.* (Ariz.), 71 Pac. 941, 61 L. R. A. 563; *Romano* v. *Capital City Brick & Pipe Co.,* 125 Ia. 591, 101 N. W. 437, 68 L. R. A. 132, 106 Am. St. Rep. 323; *Cleveland,*

*&c., R. Co.* v. *Osgood* (Ind.), 73 N. E. 285; *Alfson* v. *Bush,* 182 N. Y. 393, 75 N. E. 230, 108 Am. St. Rep. 815; *Trotta's Admr.* v. *Johnson* (Ky. 1906), 90 S. W. 540. In the Iowa and Kentucky cases, *supra,* the beneficiaries were citizens of Italy; the other cases relate to citizens of Canada, Great Britain, Norway, Russia, etc. These cases fully sustain the affirmative of the proposition under consideration.

The theory of the cases which deny the benefit of wrongful death statutes, as a general rule, to non-resident aliens is that statutes have no extra-territorial force and effect, and, in the absence of any words in the statute expressly conferring this right upon non-resident aliens, the statute will be presumed to apply only to persons residing within the jurisdiction of the state.

"It is true that legislative power is territorial," said Holmes, C. J., in *Mulhall* v. *Fallon, supra,* "and that no duties can be imposed by statute upon persons who are within the limits of another state. But rights can be offered to such persons, and if, as is usually the case, the power that governs them makes no objection, there is nothing to hinder their accepting what is offered." This learned judge further says: "In all cases the statute has the interest of the employees in mind. It is on their account that an action is given to a widow or next of kin. . . We cannot think that workmen were intended to be less protected if their mothers happened to live abroad. . . . In view of the very large amount of foreign labor employed in this state, we cannot believe that so large an exception was silently left to be read in."

The latest case in England (1901) overrules a former decision to the contrary, and holds that the fatal accidents acts apply as well for the benefit of representatives of a deceased foreigner as for those of a British subject; and the principle contended for in the prior case by the defendant, that acts of Parliament do not apply to non-resident aliens unless the language

of the statute expressly refers to them, is repudiated, and the former case so holding is overruled.    Kennedy, J., uses this language: "It appears to me, under all the circumstances, and looking at the subject-matter, more reasonable to hold that Parliament did intend to confer the benefit of this legislation upon foreigners as well as upon subjects, and certainly that, as against an English wrongdoer, the foreigner has a right to maintain his action under the statutes in question." *Davidson* v. *Hill,* 2 K. B. 606.

In a recent New York case (1905), where this question is fully considered, it is said: "The principle underlying the legislation we are considering is manifestly the protection of those who suffer pecuniary loss when a laborer or servant is killed by the negligent act of the individual or corporation employing him.    The clear intention of the Legislature is that the negligent employer shall no longer escape the consequences of his act by the death of his servant, but shall respond in damages to those who have suffered pecuniary loss.    It is difficult to conceive of any argument springing from public policy, sound reason, or a proper discrimination between the rights of the citizen and the alien, that should prevent the alien husband, wife, or next of kin of a laborer, killed by reason of his employer's negligence, from receiving those damages that a jury has awarded a local legal representative, who derives his authority from and acts under the control of the Surrogate's Court. The damages are imposed upon a negligent employer as compensation to those who suffer by his act, and there is no valid reason, as it seems to us, why they should not be paid to the survivors, whether residing here or in some foreign jurisdiction. The statute not only benefits the survivors, but protects the laboring man, as it tends to enforce observance by the employer of the rule requiring him to furnish his servant a safe place in which to work.    The laborer, leaving wife and children behind him and coming here from abroad, has a right to enter into the

contract of employment, fully relying upon the statute. The conflict of authority in England and our sister states leads us to deal with this question on principle and to base our answer to it on reasons that are weighty and controlling." *Alfson* v. *Bush Co., supra.*

These statutes are regarded by the courts as remedial in their character, as affording compensation for injuries unknown to the common law, and are to be liberally construed to promote the object the Legislature manifestly had in view. *Balto. & Ohio R. Co.* v. *Wightman's Admr.,* 29 Gratt. 431, 444, 26 Amer. Rep. 384. While our statute, like other wrongful death statutes, does not expressly include non-resident aliens, yet the language employed is general, containing nothing that would necessarily limit its operation to citizens or residents of this state. Both upon reason and authority we have no hesitation in upholding the right of the non-resident alien to maintain this action, and we are, therefore, of opinion that there was no error in the ruling of the Circuit Court in sustaining the motion of the plaintiff to reject the plea of the defendant which denied that right.

The second assignment of error calls in question the action of the Circuit Court in giving, on behalf of the plaintiff, instructions Nos. 1 and 2. These instructions are as follows:

No. 1. "The court instructs the jury that if they believe from evidence that the deceased undertook to punch the waste down the chute in obedience to the foreman's order, and that the deceased did not know or could not have ascertained, by the exercise of ordinary care and foresight, that the said waste or ore was not securely supported or shored up underneath, but was liable to give way and fall if he worked upon it, and that the deceased was inexperienced in that kind of work; but that the defendant did know, or by the exercise of ordinary care and diligence might have known, that the said waste was supported by timbers liable to break, and that it was dangerous to stand

upon them, then it was the duty of the defendant to warn the deceased of the danger to which he was exposed and which caused the accident.

"In other words, if they believe from the evidence that the danger to which the deceased was exposed in going upon the waste was not so open and obvious as to be apparent to a man of ordinary care and prudence, but was unseen and latent, and not known to deceased, and that the defendant did know of the danger, or should have known of it in the exercise of ordinary care and diligence, and yet failed to warn the deceased of it; and that the deceased was killed as a result of such failure to warn him and without fault on his part, then the defendant is liable to the plaintiff in damages. And the warning required should be given in terms sufficiently clear to call the attention of the deceased to the danger to which he was exposed."

No. 2. "The court instructs the jury that it was the duty of the defendant to exercise ordinary care to provide a reasonably safe place in which the said La Bianca was required to work; and if they believe from the evidence that the place where the said La Bianca was required to work was not reasonably safe, and that he was ignorant of this fact, and could not by the exercise of ordinary care discover the danger, it was the duty of the defendant to inform him of it, and in the absence of an official of higher grade this duty devolved upon the foreman under whom he was working, as vice-principal; and if they believe from the evidence that the said foreman ordered the said La Bianca to work in that place and did not inform him of the danger, and that as a result thereof the said La Bianca was killed without fault on his part, then the defendant is liable in damages to the plaintiff."

These instructions announce no new principles of law. They correctly propound the plaintiff's theory of the case, and they are sustained by the evidence.

The rule of law applied in these instructions was stated by this court in *Richmond Locomotive Works* v. *Ford,* 94 Va. 627, 645, 27 S. E. 509, 512, in these words: "It is the duty of the master to inform an inexperienced servant of dangers ordinarily incident to the service, and if he fails to do so, and the servant has no opportunity to learn of them, he will not be held to assume risks not obvious to one of his age, experience and judgment. 2 Bailey on Personal Injuries, section 2565. But this rule only applies where there is a danger known, or which ought to be known, to the master, of which the servant, on account of his youth or inexperience, is ignorant, and which he cannot reasonably be expected to discover by the exercise of ordinary care. *Rooney* v. *Sewall,* 161 Mass. 153, 30 N. E. 789; *Stuart* v. *West End Ry. Co.,* 163 Mass. 391, 40 N. E. 180.

The same doctrine is laid down as follows by Shearman & Redfield: "The master must, therefore, give warning to his servants of all perils to which they will be exposed, of which he is or ought to be aware, other than such as they should, in the exercise of ordinary care, have foreseen as necessarily incidental to the business in the natural and ordinary course of affairs, though more than this is not required of him. It makes no difference what is the nature of the peculiar peril, or whether it is or is not beyond the master's control. And it is not enough for the master to use care and pains to give such notice. He must see that it is actually given. If, therefore, he fails to give such warning, in terms sufficiently clear to call the attention of his servants to a peril of which he is or ought to be aware, he is liable to them for any injury which they suffer thereby without contributory negligence." 1 Shear. & Red. on Neg. (5th Ed.), section 203. And in note 5 to the same section it is said: "An employer is bound to give notice of latent dangers among which the employee is required to work, and of which the employer has knowledge."

The plaintiff's second instruction is objected to on the ground

that the mine boss, Thomas, was a fellow-servant of the deceased.

This position is not tenable. The evidence tended to show that, at the time of the accident, Thomas was discharging a non-assignable duty of the master in furnishing to the plaintiff's intestate a reasonably safe place in which to work. Ordinarily the foreman or boss of a gang of hands employed in executing the master's orders is a mere fellow-servant with the other members of the gang, but if he is discharging a non-assignable duty of the master he is to that extent a vice-principal. One of these non-assignable duties is to exercise ordinary care to provide a reasonably safe place in which the servant is to work. If the place was originally safe, but has become unsafe during the absence of the servant, and he is ignorant of this fact, and cannot discover it by the exercise of ordinary care, it is the duty of the master to inform him of it, and in his absence this duty devolves upon the foreman of the gang as a vice-principal. *Lane Bros.* v. *Bauserman,* 103 Va. 146, 48 S. E. 857, 106 Am. St. Rep. 872. And it is said in *Russell Creek Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614, that a mine boss is not a fellow-servant of the members of his gang under all circumstances, though he is such fellow-servant while discharging duties affecting the mere administration of the work to be done; he is not a fellow-servant when discharging the non-assignable duties of the master.

There is no conflict between the defendant's second instruction and those given for the plaintiff. In giving the defendant's second instruction the learned judge of the Circuit Court was evidently of opinion that there was evidence tending to sustain the theory therein presented. The jury, however, found in favor of the view taken by the plaintiff's first and second instructions, and that view is amply sustained by the evidence.

The third assignment of error is to the refusal of the Circuit Court to set aside the verdict as contrary to the law and the

.evidence.    We have already seen that the case was fairly submitted to the jury upon the law, and we are further of opinion, without reviewing the evidence here, that it is amply sufficient .to sustain the conclusion reached by the jury.

The judgment complained of must, therefore, be affirmed.

*Affirmed.*