# Staunton.

NORTON COAL CO. v. HANKS' ADMINISTRATOR.

September 10, 1908.

Absent, Keith, P.

1. MASTER AND SERVANT—*Safe Place—Presumption—Notice of Danger.*
   An employee's right to act upon the presumption that his
   employer had done his duty in furnishing him a reasonably safe
   place in which to work does not exist where the employee is affected
   with notice of facts or circumstances which would indicate to any
   reasonably intelligent man that the presumption is not justifiable.

2. INSTRUCTIONS—*Conflicting.*—Generally, where inconsistent instruc-
   tions have been given, the verdict should be set aside.

3. MASTER AND SERVANT—*Fellow Servants—Mine Foreman and Track
   Repairer.*—While, under the rules of the defendant company, it
   was the duty of a track repairer in a mine to keep a lookout for
   his own safety and also to inspect the roof at the place where he
   was working, if he had any · reason to believe that it was in an
   unsafe or dangerous condition, he was not the fellow servant of the
   mine boss upon whom the company had imposed the duty of inspect-
   ing generally the mine roof, and of seeing that it was in a reason-
   ably safe condition.

4. EVIDENCE—*Unsafe Mine—Knowledge of Mine Foreman.*—Where a
   mine foreman, charged with the duty of inspecting a mine and
   seeing that it is in a reasonably safe condition, puts a track
   repairer to work at a particular point in the mine, and he is injured
   by falling slate, it is permissible, in an action by the repairer
   against the mine owner to recover for his injuries, to prove the
   dangerous condition of the roof known to the mine foreman, or
   which ought to have been known to him by the exercise of ordinary
   care.

Error to a judgment of the Circuit Court of Wise county
in an action of trespass on the case. Judgment for the plain-
tiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Ayers & Fulton, Bullitt & Kelly* and *John W. Chalkley,* for the plaintiff in error.

*Vicars & Peery,* for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

James Hanks, whilst working as a track repairer in the coal mine of the Norton Coal Company, was killed by the falling of a large piece of slate from the roof of the haulway in which he was employed. His administrator, the defendant in error, instituted this action to recover damages from the coal company, upon the ground that his intestate lost his life by reason of its negligence. There was a verdict and judgment against the defendant, and to that judgment this writ of error was awarded.

The evidence tended to prove that Hanks, the decedent, was directed by the defendant's mine foreman to assist another employee named Murphy, in repairing the track in mine No. 4 of the defendant. They had repaired the track in one of the entries of the mine and were returning from their work, when they met the mine foreman in another entry, who was told by Murphy that there had been a wreck in that entry in which there was some bad track. The mine foreman thereupon ordered them to take up the track in that entry or haulway, and relay it that evening, so that the mining machine could be taken over it that night to the face of the coal. This was about four o'clock in the evening. Murphy and Hanks immediately commenced to tear up the track, as directed. While so engaged Murphy heard a small piece of slate or coal fall. He was unable to state whether it fell from the roof or the side of the entry or haulway in which they were working. When he first heard it he thought it was caused by a rat running "around

the gob." He tapped upon the roof immediately above him, and finding it safe continued his work. The substance which Murphy heard fall fell about ten feet from him and within five feet of Hanks. Murphy could not say whether or not Hanks heard it. Nothing was said by either to the other about it.

The evidence further tended to prove, that the falling of slate from the roof, which is called "dripping," is an indication or warning to miners that the mine roof is, or may be, in a dangerous condition.

About two hours after this slate or coal was heard to fall, and when Murphy and Hanks were at work forty or fifty feet nearer the face of the coal, a large piece of slate, about nine feet long, five feet wide and seventeen inches thick in the middle but thinner towards the sides, fell upon them, causing the death of Hanks and injuring Murphy.

There was also evidence tending to prove that the mine foreman some days before (though this is denied by him) had been informed by another employee of the company, that the roof at the place where the slate fell was in a dangerous condition, and unless the slate was timbered or taken down some one would get killed; and the foreman's reply was, that it might stand for some time.

One of the errors assigned is to the action of the court in giving and in refusing to give certain instructions.

By instruction No. 1, given at the request of the plaintiff, the jury were told, "that it was the duty of the defendant company to use all reasonable care to provide and maintain a reasonably safe and suitable place in which its employees were at work, and not to expose its employees to risks beyond those incident to the employment, and not to expose them to risks beyond those risks in contemplation at the time of the contract of service; and its employees had the right to presume that these duties had been performed, and for injuries to its employees, resulting from a breach of this duty, the defendant is

responsible in damages. And if the jury believe from the evidence in this case that the defendant company did not perform this duty, and that the breach of this duty of the defendant company was the proximate cause of the injury that resulted in the death of James Hanks while in the employment of the said defendant company, then the said defendant company is liable in damages in this case."

The objection made to that instruction is that it told the jury that the defendant's employees had the right to presume that it had performed its duty in providing a reasonably safe place in which to work, "notwithstanding the fact that two hours before the slate fell the witness Murphy had heard the dripping of the slate and knew that it meant a bad roof, and the practically necessary inference that Hanks must have heard and knew the same thing."

If, as is conceded by the defendant's counsel, there had been no evidence tending to show that the employees had notice of the dangerous condition of the roof of the haulway, the instruction would have been correct; but there being evidence which tended to prove that the roof of the mine was "dripping," which indicated that the roof was, or might be, in an unsafe condition, and that the decedent Hanks had knowledge thereof, the instruction did not correctly propound the law.

The employee's right to act upon the presumption that his employer has done his duty in furnishing him a reasonably safe place in which to work does not exist where the employee is affected with notice of facts or circumstances which would indicate to any reasonably intelligent man that the presumption was unjustifiable. See Labatt on Master & Servant, secs. 356, 413-a; 1 Bailey's Per. Inj. &c., sec. 800; 1 Shear & Red. on Neg., secs. 211 and 217.

Instruction numbered five, given upon the request of the plaintiff, properly instructed the jury upon this point. The effect of it, however, was not to cure the error in instruction No. 1. That instruction was complete in itself, and if the jury

believed the facts hypothetically stated therein, they were told that the defendant was liable, even though they might have believed that the plaintiff's intestate had knowledge which should have warned him that it was unsafe to act upon the assumption that the defendant had performed its duty. Generally, where inconsistent instructions are given, the verdict should be set aside. This case clearly comes within the general rule. See *Va. & N. C. Wheel Co.* v. *Chalkley,* 98 Va. 62, 34 S. E. 976; *N. & W. Ry. Co.* v. *Mann,* 99 Va. 180, 187, 37 S. E. 849; *Bowles* v. *Com'th,* 103 Va. 816, 831-2, 48 S. E. 527; *C. & O. Ry. Co.* v. *Whitlow,* 104 Va. 90, 93-4, 51 S. E. 182.

The giving of instruction No. 6, offered by the plaintiff, is assigned as error. Two objections are made to it—one, that there was no evidence upon which to base it; and the other, as we understand it, that the dangerous condition of the mine being equally known to the employer and employee, it does not correctly state the law.

Both objections are based upon a mistake of fact, as we understand the record. There was evidence upon which to base the instruction, and also tending to show that the employer had knowledge of the dangerous condition of the mine, not known to the employee.

Instruction No. 7, given at the request of the plaintiff, is erroneous; but as the error is apparent and one which will not be made upon another trial, it is unnecessary to discuss it.

The refusal of the court to give instructions numbered 1 and 2, asked for by the defendant, is assigned as error.

The objection urged to instruction No. 1 is that it assumes "that a horseback or kettle bottom is a piece of slate the nature of which makes it impossible to ascertain whether or not it is loose, by the usual, reasonable and ordinary methods used in determining loose slate."

It is not altogether clear that the instruction does make this assumption; but upon the next trial this defect can be removed by leaving that question clearly to the jury.

Instruction No. 2 is as follows: "The court further instructs the jury that if they believe from the evidence that the duty of inspecting the roof of the mine for the purpose of discovering defects therein and of remedying such defects when discovered, was under the rules of the defendant company devolved on the mine boss, and, also, in part upon the track men, and that James Hanks, at the time he was killed, was a track man, then said mine boss and said Hanks were fellow servants as to the inspection of the said roof and the repairing thereof, and neither can recover for the neglect of such duties by the other."

While it was the duty of the deceased to keep a lookout for his own safety, and also to inspect the roof at the place he was working, if he had any reason to believe that it was in an unsafe or dangerous condition, he was not the fellow servant of the mine boss, upon whom the defendant had imposed the duty of inspecting generally the mine roof, and of seeing that it was in a reasonably safe condition. The instruction was properly refused.

The assignment of error based upon bill of exceptions numbered 4 was abandoned in oral argument.

The remaining assignment of error is to the action of the court in permitting the following question to be asked and answered:

"Q. State whether or not it is the duty of the bank foreman to warn men of any danger which exists in the working places he assigns them?

"A. It is his duty."

The witness had testified that he was an employee of the defendant and was working in the mine at the time of the accident; and that he had informed the mine foreman of the dangerous condition of the roof where the deceased lost his life, several days before the accident. It also appeared that it was the duty of the mine foreman to inspect the mine, and to see that it was in a reasonably safe condition. Having knowledge, as the evidence tended to show, of the dangerous condition of

the roof before he sent Murphy and the deceased to work in that entry, he ought to have informed them at least of its condition, even if he thought it might stand a while longer. It was clearly admissible to prove, that under the rules of the defendant company it was his duty to warn them of this known danger when he ordered them to repair the track in that entry. Under the facts of this case, we do not think that the defendant could have been prejudiced by the question and answer; but as the case will have to be reversed upon other grounds, upon the next trial the question should be limited to the dangerous condition of the roof known to the mine foreman, or which ought to have been known to him by the exercise of ordinary care.

The judgment must be reversed, the verdict set aside, and the cause remanded for a new trial, to be had not in conflict with the views expressed in this opinion.

*Reversed.*