# Staunton.

## VIRGINIA IRON COAL. AND COKE CO. v. MUNSEY.

### September 9, 1909.

1. DEMURRER TO EVIDENCE—*Verbal Joinder—Amendment.*—The refusal to permit a demurrant to the evidence to amend his grounds of demurrer after a verbal joinder in the demurrer has been announced by the demurree is not prejudicial to the demurrant where, under the grounds already assigned, he has the right to rely upon, and does in fact argue the same point proposed to be made and relied on by the amendment.

2. DEMURRER TO EVIDENCE—*When It Should Be Overruled.*—If, upon a demurrer to the evidence, the evidence is such that the jury might have found a verdict for the demurree, the court must so find and grant judgment in his favor. Furthermore, if reasonably fair-minded men might differ upon a question, such question must be decided against the demurrant on a demurrer to the evidence.

3. MASTER AND SERVANT—*"Bank Boss"—Vice-Principal.*—A "bank boss," when inspecting a mine to ascertain if it is a safe place for miners to work in, is discharging a non-assignable duty of the master, and is a vice-principal, and not a fellow-servant of such miners.

4. DEMURRER TO EVIDENCE—*Positive Evidence of Demurree.*—Upon a demurrer to the evidence, the positive evidence of the demurree that he did not have knowledge of a danger confronting him must be accepted as true.

5. MASTER AND SERVANT—*Safe Place—Assumption of Risk.*—Where a miner has reported to the "bank boss" the unsafe condition of the mine, and the latter inspects the mine and professes to have made the mine safe, and tells the miner that he can safely return to work in the mine, the miner has the right to rely upon such assurance, and if he does rely upon it and returns to work in the mine he does not assume the risk of working therein.

6. MASTER AND SERVANT—*Safe Place—Duty of Servant—Case at Bar.*—While it is as much the duty of the servant to provide for his own safety from such dangers as are known to him, or as are discernible by ordinary care on his part, as it is the duty of the

master to provide for him, yet, in the case at bar, it was the duty of the master to have provided against the accident which caused the injury to the servant, and the evidence fails to show that the servant neglected any duty which devolved upon him. The servant was injured by a rock falling on him from the roof of a mine, and the evidence is clear that the danger was known to the master, and that it was his duty to have propped the rock that fell upon the servant before sending him in the mine to work. The danger was a continuing one, and the place was not rendered unsafe by any act on the part of the servant.

Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*W. H. Price, Jr.,* and *Bullitt & Chalkley,* for the plaintiff in error.

*Ayers & Fulton* and *B. H. Sewell,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action was brought by Marion A. Munsey, to recover of the Virginia Iron, Coal and Coke Company damages for injuries sustained by Munsey because of the negligence of the defendant company.

The evidence having gone to the jury, the defendant demurred thereto, which demurrer was overruled, and judgment entered in favor of the plaintiff for the amount of damages ascertained by the jury, subject to the ruling of the court upon the demurrer to the evidence; and to that judgment this writ of error was awarded.

There are three grounds of error assigned in the petition for the writ of error. The first is to the ruling of the court on the demurrer to the declaration and to each count thereof; the second, to the overruling of the demurrer to the evidence

and entering judgment against the defendant; and the third, the refusal of the court to allow the defendant to amend its demurrer to the evidence and to assign an additional or seventh ground therefor.

No reason is given or authority cited to show why the declaration does not fully measure up to the requirements of a declaration in such a case, and we do not deem it necessary to discuss this assignment further.

The defendant filed six grounds of demurrer to the evidence, and after a verbal joinder in the demurrer had been announced by the plaintiff, and after his witnesses and the jury had been discharged, the defendant asked leave to add the additional ground of demurrer, which presented the question, whether or not, if any of the servants of the defendant were guilty of negligence which was the proximate cause of the injury complained of, such servants were fellow servants of the plaintiff.

As practically conceded by the learned counsel for the defendant company, the refusal of the court to allow the said amendment to the grounds of demurrer was not prejudicial to the defendant company, because it had the right to and did argue in its petition for this writ of error the point proposed to be made and relied on by the amendment. In other words, if as a matter of right the defendant was entitled, under the circumstances stated, to add an additional ground of demurrer to the evidence, the point proposed to be made by the additional assignment was proper to be made, and doubtless was made, in the court below, as well as in this court, under the other grounds of demurrer filed in accordance with the statute. Acts 1906, p. 301.

This leaves for determination the sole question, whether or not the circuit court erred in overruling the demurrer to the evidence, and in entering judgment thereon in favor of the plaintiff, Munsey.

Munsey, aged about 30 years, inexperienced in mining coal, was employed by the defendant company in the fall of 1906 and put to work in the latter's mine, known as the "Sexton" mine, in Wise county, and, after working there about three and one-half months, he received the injuries of which he complains.

He had first worked about one and a half months in Room No. 9, on "Caney Entry," to the mine, and then, by order of a "cut boss" in that part of the mine, he went to work in Room No. 8, where he worked until about the 10th of January, 1907. The top, i. e., the roof, of the mine was bad generally and regarded as dangerous. By reason of this dangerous condition Munsey quit work in Room No. 9, and by the direction of the "cut boss" went to work in Room No. 8, the top of which room was also regarded as dangerous, and for that reason, and because the room was up next to the water the defendant company wanted to get at, the miners therein were paid 95 cents per car for the coal mined and sent out, instead of 85 cents per car paid in the other rooms of the mine.

On January 10, 1907, the top of Room No. 8 where he was at work had become, as Munsey considered, imminently dangerous; whereupon he applied to one B. F. Kiser, a fellow miner of considerable experience in mining coal, to come into his (Munsey's) room and advise him whether it was safe for him to continue to work therein. Kiser, upon going into Munsey's room, and after looking over it, found the top of the room in a very dangerous and unsatisfactory condition, and advised Munsey "to leave it and get out of there at once and stay out until it was put in a safe condition"; and thereupon Munsey did leave, and informed Gibson, who was the general mine foreman, as to the condition of the room where he (Munsey) had been at work, that the roof needed propping, etc., but did not tell Gibson what particular part of the roof was bad,

or about any particular piece of slate which Kiser said he had pointed out to Munsey.

Gibson had general supervision over all of the entries to the mine, and one William Mullins was his assistant mine foreman; the latter having in charge the entry in which Munsey had been at work. Gibson did not at once go into the room which Munsey had reported to him as unsafe and make a personal examination of it, but between the time Munsey complained of the condition of the room, on the 10th, and the 14th of January, Gibson sent Will Whiteside, the foreman of the timber and slate men, into the room with instructions to do what was necessary to make the roof of the room safe. Whiteside had been employed in the "timber business" some years, and was considered experienced in his business; and pursuant to Gibson's instructions he went into Room No. 8 and, after removing some slate that had fallen up next to the face of the coal after Munsey left the room on the 10th, set three props under the slate, the closest of which was five or six feet from the face of the coal, Whiteside claiming, as he testified in this case, that it was useless to set props closer to the coal or in the hole from which a small piece of slate had fallen, or under the edge of the coal, because the slate appeared perfectly solid and there appeared no present danger therefrom, as it ran back over the face of the coal and was being held solidly by the coal, and that the slate which was sticking out was up so near the face of the coal a prop set under it would have been knocked out by the next "shooting" of the coal. In other words, unless the miner did further "shooting" there was in Whiteside's opinion no danger from the piece of slate sticking out, and if he did further "shooting" it was the miner's duty to examine the roof and see if any further propping was necessary.

On January 14, and after Whiteside had done all the propping he deemed necessary in Room No. 8, the "bank bosses," Gibson and Mullins, inspected the room, and having called

Munsey from another room where he was then at work into Room No. 8, they assured him that it had been put into a perfectly safe condition, Gibson taking Munsey's pick and tapping on the roof to show him that the roof was safe, and directed Munsey to go back there to work, telling him that there was a "horseback" in the roof, but notwithstanding that again assuring him that the roof was safe as each end of the "horseback" rested upon the ribs of coal and would not fall. The "horseback" of which Gibson and Mullins were then speaking had not been propped, as they saw, yet they assured Munsey that he would be entirely safe in returning to his work in Room No. 8, instead of informing him of the fact, which he did not then know, that a "horseback," as the evidence plainly shows in this case, was liable to fall at any time, and "without warning."

Relying upon the representations and assurances of Gibson and Mullins as to his safety, Munsey obeyed their order and went back to work in Room No. 8 the next morning, January 15. In the forenoon of that day, he bored a hole in the usual way in the left rib of the room and made one blast, which did not in any way affect the "horseback," and on the next day, January 16, about three o'clock in the afternoon, the said rock or "horseback" fell on him, inflicting serious injuries of a permanent character, one of which was an injury to his back, and another resulting in the amputation of one of his legs above the knee.

This court has repeatedly stated the rule governing courts in considering a case where there is a demurrer to the evidence, one of its latest expressions upon that subject being found in *Milton* v. *N. & W. Ry. Co.*, 108 Va. 752, 763, 62 S. E. 961, where it is stated, that if upon a demurrer to the evidence, the evidence is such that the jury might have found a verdict for the demurree, the court must so find and grant judgment in his favor; and, further, that if reasonably fairminded men might differ

upon a question, such question must be decided against the demurrant on a demurrer to the evidence.

It would seem clear from the statement above of the circumstances under which Munsey received the injuries of which he complains that, under the rule just stated governing the consideration of the evidence, it and the inferences which might have been drawn from it were quite sufficient to have warranted the jury in finding that the defendant was guilty of negligence, and that such negligence caused the injuries which the plaintiff, Munsey, sustained, without fault on his part.

Gibson and Mullins, the "bank bosses," when inspecting the roof of Room No. 8 on January 14, and when they gave Munsey assurance that he could safely return to work in that room, were discharging the non-assignable duties of the master, and were, therefore, vice-principals and not fellow-servants of Munsey. *Russell Creek Coal Co.* v. *Wells,* 96 Va. 416, 31 S. E. 614; *Black* v. *Virginia Portland Cement Co.,* 106 Va. 121, 55 S. E. 587; *Low Moor Iron Co.* v. *LaBianca's Admr.,* 106 Va. 83, 55 S. E. 532; *Norton Coal Co.* v. *Hanks,* 108 Va. 521, 62 S. E. 335.

Without attempting to review the evidence at any very great length, it clearly appears therefrom that both Gibson and Mullins knew and understood at the time that they directed Munsey to return to work in Room No. 8, that there was a "horseback" in the roof of the room, which was liable to fall at any time and without warning, a fact not known to Munsey; and further that they knew that to insure the safety of a miner working in that room it was necessary to "collar" the "horseback;" and that it was not within the power of Munsey, or any other miner working in the room, nor was it his duty, to so prop the "horseback," even if he had known of the danger of its falling.

Upon these facts and circumstances, this court would not be warranted in saying, as a matter of law, that the injuries complained of were not more naturally to be attributed to the negligence of the defendant than to any other cause.

The contention which is made on behalf of the defendant company that Munsey himself contributed to the cause of his injuries rests solely upon some suggestions made by witnesses introduced on behalf of the defendant company that the blast set off by Munsey in the forenoon of the 15th was so much greater than was usual, it loosened the rock which fell upon him on the 16th; but this evidence utterly fails to establish the fact which was sought to be proved by its introduction, and in fact it is so plainly in conflict with the facts and circumstances which are clearly proved that it could not be considered for one moment as sufficient to have justified a jury in finding that Munsey was, on the occasion when he was injured, guilty of contributory negligence, proximately causing the accident producing his injuries.

The court is further of opinion that the contention that the evidence shows that Munsey had knowledge of the danger confronting him in Room No. 8, and assumed the risk incident thereto, is wholly without merit. This contention is predicated upon the theory that Munsey was chargeable with as much knowledge of the danger as Kiser had; but upon the demurrer to the evidence his positive statement that he did not understand it must be taken as true; and that he did not so understand the situation is corrobated by every fact and circumstance proven in the case. The "bosses," Gibson and Mullins, took charge of and pretended to inspect the "horseback" or rock which fell upon Munsey and caused the injuries to him, and their neglect to properly inspect the condition of the room and to take the necessary precautions against injury to a miner working therein was the neglect of the defendant company. Munsey had a right to rely, as he did rely, upon the assurances given by these "bosses," that he could safely work in Room No. 8, and these assurances refute absolutely any suggestion that Munsey assumed the risk of working therein.

It is very true that it is the duty of a servant to provide for his own safety from such dangers as are known to him, or

are discernible by ordinary care on his part, and that this duty is as obligatory upon him as the duty of the master is upon the master to provide for him; but in this case there is no room to question that it was the duty of the master to have provided against the accident which caused the injury to Munsey, and the evidence utterly fails to show that Munsey neglected any duty which devolved upon him. As we have seen, as soon as he was advised of the dangerous conditions surrounding him in Room No. 8 on January 10, he informed the agent of the defendant company of the situation, and the agent, Gibson, vice-principal of the defendant company discharging a non-assignable duty of the company, took charge of the room, and Munsey never returned thereto until he had assurance that the dangers therein had been removed. *Norton Coal Co.* v. *Murphy,* 108 Va. 528, 62 S. E. 268, and the authorities there cited.

This is not a case where the conditions of the mine were constantly changing, as in the case of *Russell Creek Coal Co.* v. *Wells, supra,* but was a continuous dangerous condition, known to the defendant company, or should have been known by it, through its servants and agents, Gibson and Mullins; and the evidence is clear that it was the duty of the defendant company to have propped the rock that fell upon Munsey before sending him back in that room to work, and, in the absence of proof of any act on the part of Munsey rendering the place unsafe after he went back in Room No. 8, the injuries to him are attributable alone to the negligence of the defendant company.

The views above expressed make it unnecessary to consider other grounds of error assigned in the petition for this writ of error.

For the reasons stated, the judgment of the circuit court must be affirmed.

*Affirmed.*