# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## VALZ V. GOODYKOONTZ.

### November 16, 1911.

Absent, Cardwell, J.

1. NEGLIGENCE—*Explosives—Blasting—Demurrer to Evidence—Case at Bar.*—A contractor who was engaged in work near a railroad track, in the course of his work, caused a large quantity of rock to be blown down on the track entirely obstructing the passage of trains, and it was necessary to break these rocks with dobie blast in order to remove them. While this was being done, the plaintiff, who was assistant trainmaster of the railway company, and as such charged with the duty of giving special attention to the movement of trains, of investigating the detention of trains, and of clearing the track of obstructions, went to the place of obstruction. Being informed that blasts were about to be put off, he and others retired to a place of safety and remained there until four blasts had exploded, when the contractor's foreman called out "all over, boys, come on back," and set out with his men to resume work. The plaintiff and others followed the foreman, and the plaintiff, addressing him by name, enquired at what time they could clear the track. About that time the plaintiff directed the foreman's attention to smoke arising from a nearby rock, and enquired of him what it was that was smoking, but was assured that it was "nothing" and that there was "no danger." The plaintiff repeated the enquiry and asked if it was perfectly safe, and was assured by the foreman that it was safe and that there was no danger. Thus assured, he continued to follow the foreman, who had passed the danger point, when a delayed blast from which the smoke was issuing went off, and a fragment of rock struck the plaintiff on the head, causing the injury complained of. The plaintiff sued the contractor, and on a demurrer to the evidence by the defendant, it was

   *Held:* The foregoing facts and just inferences which a jury would have been warranted in drawing from the evidence make out a clear case for the recovery of damages. The defendant owed the plaintiff the duty to exercise ordinary care for his safety, but failed to discharge it. The measure of duty

owing from the defendant to the plaintiff was unquestionably
as great as from master to servant; and even in case of a
servant, the master would be liable where he assured the ser-
vant, who was ignorant of the danger, that a place was safe,
and who went to work therein, acting upon such assurance,
and was injured.

Error to a judgment of the Circuit Court of Amherst
county in an action of trespass on the case. Judgment for
the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. M. Perry* and *Randolph Harrison,* for the plaintiff in
error.

*Lee & Kemp,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The judgment under review was rendered for the defend-
ant in error (the plaintiff below) on a demurrer to the evi-
dence by the defendant.

The following are the essential facts of the case as thus
submitted: The defendant, Valz, was a railroad contractor
in the employment of the Western State Hospital, engaged
in grading a spur track from the Norfolk and Western Rail-
way, at a point about one mile east of Lynchburg, to the
power house of the Virginia State Epileptic Colony in Am-
herst county. At the time of the accident the defendant,
in the course of his work, had caused a large quantity of
rock to be blown down on the track of the railway company,
which entirely obstructed the passage of trains. A freight
train from the east had been stopped 150 yards from the
mass of *debris* (which one of the witnesses testified was
"as high as a house"), and still further east a passenger

train was held up at a stop known as "James River." The plaintiff was assistant trainmaster of the railway company, and, as such, was charged with the duties, among others, of giving special attention to the prompt movement of traffic, to investigate the detention of trains, and to clear the track of obstructions. He came from "James River" to the obstructed point on one of the company's light engines, which was drawn up in rear of the delayed freight train, and went forward to the engine of that train, where he engaged the conductor in conversation concerning the obstruction. Samuel Harvey was the defendant's foreman in charge of the work of clearing the track where the accident happened. In order to remove the rocks from the track it was necessary to break them up by means of dobie blasts, which were being placed and exploded under his direction. After the plaintiff had talked with the conductor for a short while, the two men started in the direction of the slide, when they were notified that blasts were about to be set off. Thereupon, along with Valz's men and a section foreman and his gang, they retired to a place of safety, where they remained until after four blasts had exploded, when Harvey called out, "All over, boys, come on back," and set out with his men to resume work. The plaintiff, in company with the freight conductor and a civil engineer, followed Harvey, and, addressing him by name, inquired at·what time they could clear the track. About that time the plaintiff also directed Harvey's attention to smoke arising from behind a near-by rock, and said, "Mr. Harvey, what is that smoking?" to which remark Harvey replied that it was "nothing, just some powder or a chunk burning up," that there was "no danger." The plaintiff repeated the inquiry about the smoke, and asked if it was perfectly safe, and was assured by Harvey that it was safe and that there was no danger. Thus assured he continued

to follow Harvey, who had passed the danger point, when a delayed blast, from which the smoke was issuing, went off and a fragment of rock struck the plaintiff on the side of his head, crushing in the skull and leaving a hole large enough to admit the passage of a large duck egg or goose egg, and inflicting upon him injuries of a serious and permanent character.

We are of opinion that the foregoing facts and just inferences which a jury would have been warranted in drawing from the evidence make out a clear case for the recovery of damages.

We cannot yield to the suggestion of counsel, that at the time of receiving the injury complained of the plaintiff was a mere sightseer on the scene, drawn thither by idle curiosity, and to whom the defendant owed no higher duty than to refrain from inflicting wanton or wilful injury upon him. In the light of the evidence such conclusion would be to the last degree unwarrantable. The plaintiff was stricken down at his post of duty, while on the premises of the railway company and in discharge of an important function to his master and the public, to relieve a condition brought about by the defendant himself. Moreover, it is a just, if not an irresistible inference from the evidence, which the jury might well have drawn and which the court must draw on the demurrer to the evidence, that the official character of the plaintiff and the object of his visit were known to the defendant. The light engine which brought him on the ground was run up in the daytime and stopped in rear of the freight train, and within 150 yards of where the foreman, Harvey, was at work. Besides, it appears that the plaintiff was personally acquainted with Harvey, and addressed him by name, and while in company with the conductor of the freight train and the civil engineer talked with him about the progress of the work and safety of the

premises. It would, indeed, be a pernicious doctrine to establish, that, in these circumstances, the only consideration to which the plaintiff was entitled at the hands of a contractor (who, in the prosecution of his own work, had obstructed the main track of an important railway company) was that he should not be wantonly or wilfully injured.

There can be no question but that the defendant owed the plaintiff the duty to exercise ordinary care for his safety; and that the defendant failed to discharge that duty is equally plain. The measure of duty owing from the defendant to the plaintiff was unquestionably as great as from master to servant. *Norfolk & Portsmouth Traction Co.* v. *Daily's Admr.*, 111 Va. 665, 69 S. E. 963; *Lane Bros. Co.* v. *Barnard's Admr.*, 111 Va. 680, 69 S. E. 969, 31 L. R. A. (N. S.) 1209; *Walton, Witten & Graham* v. *Miller,* 109 Va. 210, 63 S. E. 458, 132 Am. St. Rep. 908.

Even in case of an employee the master would be liable where he assured the servant, who was ignorant of the danger, that a place was safe, and who went to work therein, acting upon such assurance. *Lane Bros.* v. *Bauserman,* 105 Va. 152, 48 S. E. 857, 106 Am. St. Rep. 872; *Low Moor Co.* v. *La Bianca,* 106 Va. 83, 55 S. E. 532; *Lane Bros.* v. *Seakford,* 106 Va. 93, 96, 55 S. E. 556; *Va. Iron, &c., Co.* v. *Munsey,* 110 Va. 156, 162-3, 65 S. E. 478.

The defendant's foreman, in this instance, was using a high explosive, dynamite, in making these dobie blasts, and he must be held to have known the danger attending its use. He also knew that five blasts had been set, to be exploded at intervals; and he knew, or ought to have known, that only four had been exploded. Hence, it was negligence on his part to have called in his employees to work, and to have assured the plaintiff of the safety of the place, and iterated that assurance after his attention had been speci-

fically directed to smoke arising from a point at which the blast had been placed.

These are the controlling considerations in this case, and render further discussion of it unnecessary.

The judgment of the circuit court is plainly right, and must be affirmed.

*Affirmed.*