## HELDENFELS v. MONTGOMERY.

### No. 11048.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 12, 1941.

On Motion for Rehearing Jan. 7, 1942.

 

Kemp, Lewright, Dyer, Wilson & Sorrell, of Corpus Christi, for appellant.

J. Marvin Ericson, of Corpus Christi, and Gus L. Kowalski, of Kingsville, for appellee.

MURRAY, Justice.

Appellee, J. Earl Montgomery, instituted this suit in the District Court of Nueces County against F. W. Heldenfels, appellant, seeking to recover for damages resulting from personal injuries sustained by appellee when he undertook to repair a piston or plunger belonging to appellant.

The cause was submitted to a jury upon special issues and upon the jury's answers judgment was rendered in favor of Montgomery in the sum of $3,367.50, from which judgment Heldenfels has prosecuted this appeal.

Appellant's first point is that the trial court should have instructed a verdict in his favor because the evidence shows that appellee was guilty of contributory negligence as a matter of law. We overrule this contention. F. W. Heldenfels was a road contractor, J. Earl Montgomery was a

blacksmith or machinist and had contracted to do repair work for F. W. Heldenfels while he was completing some road contracts in Nueces County. Montgomery's shop was in the town of Bishop. Heldenfels, in his road construction, used a certain road roller, the engine on which contained a water pump. The piston in this pump was made of brass, was about 12 or 14 inches in length and about two inches in diameter. The wrist-pin hole in the piston became worn, so the piston was taken out and delivered to one Joe Roy Hunter. Hunter, who was an employee of appellant, stated that Fred Heldenfels, the general superintendent, instructed him as follows: "He said to take it and have it repaired the best I could," and that was all he was told to do.

On April 7, 1938, Hunter, in compliance with his instructions, took the piston to Montgomery's shop, in Bishop, to have it repaired. Hunter requested appellee to build up the wrist pin hole and told him how he wanted it done. Appellee asked Hunter what the piston was, and he was told that it was a pump piston. Appellee looked at the piston and felt of it, but was not satisfied and would not rely on his own judgment as to whether it was solid or hollow. To build up the wrist pin hole would require applying heat to the piston by means of an acetylene welding torch, and he knew this would be dangerous if the piston was hollow and not solid. He could not see the inside of the piston, and, from an inspection of its surface, it appeared to be solid. Montgomery then asked Hunter whether the piston was solid or hollow, to which Hunter replied that he supposed it was solid. Montgomery then told Hunter that if it was hollow he would not apply heat to it without first drilling a hole into the hollow. Hunter then said "Hell, I know it is solid; we had it made at the Alamo Iron Works"; and further stated that it was made of a piece of bar brass. Hunter then said they were in a hurry for the piston and he would go for a cup of coffee and return for it in a few minutes. Montgomery, relying upon the statement of Hunter, applied heat to the piston for the purpose of building up the wrist pin hole, whereupon it exploded, injuring him. Hunter denied telling appellee that the piston was solid, but the jury finding on the matter was favorable to appellee.

We cannot say, as a matter of law, that appellee was guilty of contributory negligence in relying upon Hunter's statement and applying heat to the piston, although he realized at the time that if it was hollow he was subjecting himself to danger. Before we could hold, as a matter of law, that appellee was guilty of contributory negligence in applying heat to the piston under all the circumstances, it would have to appear that such act was so opposed to the dictates of common prudence that, without a doubt, no careful person would have committed it. This does not appear. A jury question was presented and their answer thereto is binding upon this court. McAfee v. Travis Gas Corp., Tex.Sup., 153 S. W.2d 442; Humble Pipe Line Co. v. Spivey, Tex.Civ.App., 13 S.W.2d 481; International & G. N. Ry. Co. v. Ormond, 64 Tex. 485; Gulf, Coast & S F. Ry. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227; Berwald v. Turner, Tex.Civ.App., 52 S.W.2d 112.

Appellant next contends that Hunter was a mere ministerial servant and, therefore, he was not responsible for Hunter's statement with reference to the piston being solid. Hunter was more than a mere ministerial servant; he was given the job of getting the piston fixed, without any specific instructions as to how, when and where it was to be repaired. This made him more than a ministerial servant.

Appellant contends that appellee had equal if not better means of knowing whether the piston was solid than Hunter did. We overrule this contention, as Hunter's statement, that they had the piston made at the Alamo Iron Works out of a piece of bar brass, would indicate that he had superior knowledge concerning the matter. We think the question is not whether Hunter was a ministerial servant, but whether he was acting within the scope of his employment and in the furtherance of his master's business when he told appellee the piston was solid. The statement was made to induce appellee to repair the piston at once and without delay. It was within Hunter's employment and in the furtherance of his master's business. 39 Corpus Juris 127a. It is unimportant that Hunter was not authorized to make the statement by appellant. Burnett v. Oechsner, 92 Tex. 588, 50 S.W. 562, 71 Am.St. Rep. 880. The statement of Hunter was a statement of present fact, to-wit, that the piston was solid, and it was not a mere expression of an opinion. Whether Hunter thought the statement to be true or false matters not. He made the positive state-

ment and appellee relied upon it. Valz v. Goodykoontz, 112 Va. 853, 72 S.E. 730; Washington, etc., Bridge Co. v. Pennsylvania Steel Co., 4 Cir., 226 F. 169. It was made in the furtherance of the master's business, for the purpose of inducing appellee to repair the piston and Heldenfels is liable for the resulting injuries. American Law Institute's Restatement of the Law of Torts, Volume 2, p. 840.

■ The trial court, in connection with the special issues submitted to the jury, gave the following definition of "course of employment," to-wit: "By the term 'course of employment' as used in this Charge, is meant that the act, if any, must be done or statement made, if any, in furtherance of the employer's business and for the accomplishment of the object for which the employee was employed at the time and place and upon the occasion in question, even though the commission of the particular act, if any, or the making of the particular statement, if any, was not specifically authorized by the employer, and even though it involved the abuse or excess of authority conferred upon the employee, and the act must be naturally and fairly incident to the business at hand."

The definition was not subject to the objection that it was a general charge. Under New Court Rule No. 277 for Civil Procedure, such a definition is no longer subject to the objection that it is a general charge, and under New Rule No. 814 for Civil Procedure it is our duty to here apply the provisions of Rule No. 277, unless such application be not feasible or would work injustice. We think it is both feasible and just to here apply Rule No. 277.

■ The trial court, in submitting Special Issue No. One, did so in the following language, to-wit: "Do you find from a preponderance of the evidence that at the time and place in question Joe Roy Hunter stated to the plaintiff, J. Earl Montgomery, that the piston or plunger in question was solid? Answer 'yes' or 'no,' as you find the facts to be." To which issue the jury answered "Yes."

Appellant contends that by using the expression, "as you find the facts to be" the burden of proof was not properly placed. We overrule this contention. Traders & General Ins. Co. v. Jenkins, 135 Tex. 232, 141 S.W.2d 312; United Employers Cas. Co. v. Bezdek, Tex.Civ.App., 146 S.W. 2d 473.

■ In submitting the "amount of damage" issue the court instructed the jury that they might consider as an element of damage "the reasonable present cash value of necessary doctor's, medical and hospital services rendered to plaintiff in the treatment of his injuries from the time of his having sustained said injuries, if any, to the time of trial, and not exceeding the sum of Three Hundred Sixty-seven & 50/100 ($367.50) Dollars." Under the evidence, this amount should have been $267.50. Appellee has offered to file a remittitur of $100 to correct this error. The court will require such a remittitur, but, as the objection of appellant did not clearly point out this error in the charge, this remittitur will in no way affect the adjudication of the costs on appeal.

All other points raised by appellant have been considered and are overruled.

The judgment is affirmed.

On Motion for Rehearing.

NORVELL, Justice.

■ Upon a re-examination of the record of this case, in the light of appellant's motion for rehearing, the majority of this court is of the opinion that appellant's eighth point should be sustained, the judgment of the trial court reversed and the cause remanded.

By the point above mentioned it is asserted that the trial court committed reversible error by giving a general charge to the jury.

In order to fairly present the contention made, it is necessary to consider particularly special issues Nos. 1, 4 and 6, which read as follows:

(1) "Do you find from a preponderance of the evidence that at the time and place in question Joe Roy Hunter stated to the plaintiff, J. Earl Montgomery, that the piston or plunger in question was solid? * * *"

(4) "Do you find from a preponderance of the evidence that the plaintiff, J. Earl Montgomery, in welding the piston in the condition in which it was handed to him by Joe Roy Hunter, relied upon the statement, if any, made to him by Joe Roy Hunter that the piston was solid?"

(6) "Do you find from a preponderance of the evidence that the act of the plaintiff, J. Earl Montgomery, in relying upon the statement, if any, made to him by Joe Roy Hunter, if he did so rely upon such

1002

statement, was negligence, as that term is defined herein?"

The trial court defined negligence as meaning "the failure to exercise ordinary care, and 'ordinary care,' is that degree of care which a person of ordinary prudence would exercise under the same or similar circumstances."

Over the objection of appellant, that the same constituted a general charge, the court below gave the following instruction: "You are further instructed that a person may rely upon assurances of safety made to him by another where under the same or similar circumstances an ordinarily prudent person would do so."

Each of the present members of our Supreme Court has written at least one opinion holding that a charge similar to the one above set out is a general charge. J. M. Radford Grocery Company v. Andrews, Tex.Com.App., 15 S.W.2d 218, by Judge Critz; Texas & Pacific Ry. Co. v. Perkins, Tex.Com.App., 48 S.W.2d 249, by Judge Sharp; Lamb v. Collins, Tex.Civ.App., 93 S.W.2d 490, 491, by Judge Alexander.

■ The above cases are also authority for the proposition that when valid objection is made the giving of a general charge in a special issue case is reversible error. In Lamb v. Collins, supra, it was expressly held that an objection to a particular instruction "on the ground that it was a general charge" was a sufficient predicate for the assertion of error.

■ In our opinion, the Texas Rules of Civil Procedure promulgated by the Supreme Court in accordance with House Bill 108, Ch. 25, p. 201, General Laws of the 46th Legislature, Article 1731a, Vernon's Ann.Civ.Stats., have no application to the matter here under discussion.

Rule 814 provides that said rules "shall take effect on September 1, 1941. They shall govern all proceedings in actions brought after they take effect, and also all further proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure shall apply. All things properly done under any previously existing rule or statutes prior to the taking effect of these rules shall be treated as valid. * * *"

The petition in this cause was filed on August 19, 1939. The proceedings concern-

ing which complaint is made, that is the court's instruction to the jury, took place on the 25th day of November, 1940, long before the effective date of the rules. As a matter of fact, these proceedings took place prior to the convening of the 47th Legislature, on January 14, 1941. House Bill 108, above mentioned, expressly provides that rules promulgated in accordance with the act shall become effective September 1, 1941, "unless disapproved by the Legislature" at the next Regular Session, *i. e., the 47th Session.*

Under these circumstances, the parties were certainly not required to anticipate the provisions of new Rules of Civil Procedure which were then in the embryonic stage. If a contrary view be taken, it is only necessary to point out that Rule 814 in its present form, was included in the original promulgation of rules made by the Supreme Court on October 29, 1940, although some 89 changes, additions or modifications have been made since that date. Under the plain wording of this rule, as above pointed out, any party to a cause filed prior to September 1, 1941, in which a jury was instructed prior to said date, could certainly rely upon the stated inapplicability of the proposed Rules of Civil Procedure, and try his case in accordance with the statutes and rules of decision in force at the time the proceedings took place. That confusion would result from a contrary holding is believed obvious. It can not be said that the adoption of Rules of Civil Procedure by the Supreme Court, to become effective as provided for therein, ipso facto operated to overrule the authorities above cited, as well as many others of similar import, as of October 29, 1940, the date of the original promulgation of said rules.

Further, we are not prepared to say that the giving of the charge here involved would not be reversible error under the Rules of Civil Procedure, provided proper objection, in conformity with said rules, were made. Certainly, this unnecessary and redundant instruction in accordance with appellee's theory of the case, can not be approved as a proper charge. Believing, however, that the Rules of Civil Procedure have no application to this case, we pretermit further discussion, except to point out that the exact reading of Rule 277 is in part as follows: "In submitting special issues the court shall submit such explanatory instructions and such definitions of legal terms *as shall be necessary* to enable the

jury to properly pass upon and render a verdict on such issues, and in *such instances* the charge shall not be subject to the objection that it is a general charge." (Italics ours.)

The judgment appealed from is reversed and the cause remanded.

MURRAY, Justice (dissenting).

I cannot concur in the opinion of the majority of this court calling for the reversing of the judgment and the remanding of this cause, because the trial court in connection with a special issue charge also gave a general charge.

As has been hereinbefore stated, Rule 277 of Civil Procedure states, in effect, that it shall not constitute reversible error to give a general charge in a special issue case. The question is whether this rule should be here applied inasmuch as the trial of this cause in the District Court took place prior to September 1, 1941, the date upon which the new rules of practice and procedure in civil cases became effective. It is clear to me that the provisions of New Rule No. 277 should here apply.

Prior to September 1, 1941, the statutes and court rules were silent as to whether or not the giving of a general charge in a special issue case was reversible error. Since that date the rules affirmatively provide that the giving of such general charge is not reversible error.

New Rule 434 provides, in effect, that this court shall not reverse any judgment or remand a cause for a new trial on the ground that the trial court has committed an error of law in the course of the trial, unless we are of the opinion that the error complained of amounts to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. How can it be said that the giving of a general charge prior to September 1, 1941, was reasonably calculated to cause and probably did cause the rendition of an improper judgment, but that the giving of a general charge in a special issue case after September 1, 1941, is not reasonably calculated to cause and probably did not cause the rendition of an improper judgment?

New Rule 814, which relates to the time the new rules of practice and procedure in civil cases shall be given effect, provides, among other things, that "All things properly done under any previously existing rule or statutes prior to the taking effect of these rules shall be treated as valid," but such rule is carefully worded so as not to contain a provision which would be the converse of this, to-wit: "All things improperly done under any previously existing rule or statutes prior to the taking effect of these rules shall be treated as invalid."

It is quite obvious why the latter provision was left out of Rule 814. Evidently the authors of the new rules did not wish to compel any appellate court to place itself in the illogical position of saying that a certain act committed prior to September 1, 1941, would render a trial unfair, but the same act committed subsequent to September 1, 1941, would not render such a trial unfair. Likewise, such authors did not desire to compel any appellate court to reverse a judgment for the giving of a charge when if upon another trial that same charge were to be given it would not constitute reversible error.

It is my opinion that the judgment should not be reversed for the reasons stated in the majority opinion, but should be affirmed, as stated in the original opinion.