PAUL ANDERSON, Appellee, v. HENRY TYLER et al., Appellants.

No. 43793.

JUNE 15, 1937.

 ┤├ 

W. C. Ratcliff and R. J. Swanson, for appellants.

Clifford Powell, for appellee.

SAGER, J.—The two defendants in this case are partners, operating under the name of Tyler Brothers, and engaged in the business of bottling and wholesaling soft drinks, among them that beverage known as Coca-Cola. Previously to the occurrences out of which this action grew, defendants had sold to a country club near Red Oak certain cases of Coca-Cola. This country club was under the management of one Kroese, who dispensed Coca-Cola and such other drinks as patrons of the club chose to call for.

On June 9, 1935, the country club had what was called an "open day," on which occasion devotees of golf were generally invited to be present and participate. Among those who resorted to the club was the plaintiff, who, with three others, set out on their first round of nine holes of golf, which they completed about 10 o'clock in the morning. Having done so, they resorted to the refreshment stand, which at the moment was in charge of one Larson who was working under the caretaker, Kroese. The plaintiff purchased a bottle of Coca-Cola at the stand maintained by the club. After drinking a part of the contents of the bottle and finding it distasteful he discovered a mouse in the bottle. He then and there reported the incident to those in charge of the stand, and placed the bottle with the mouse and the remaining Coca-Cola in a locker at the clubhouse. After drinking, plaintiff attempted to continue his golf game, but after a few minutes quit and went to Red Oak to consult a doctor. This physician treated him, and sealed the bottle containing the mouse. On Wednesday following the plaintiff developed sore

throat, diarrhea, and other disabilities which need not be set out but which abundantly warranted the verdict returned by the jury. It became necessary for the plaintiff to leave his work, and he lost about twenty pounds in weight. Two doctors testified that in their opinion plaintiff's condition was the direct result of drinking the contaminated beverage.

It will be seen from the foregoing statement that this cause presents for decision that question which has so often been before the courts, to wit: What is the liability of a manufacturer or packer of a defective article, for injury to the person of the ultimate consumer who purchased from a middleman? This question has so frequently arisen in the various jurisdictions as to make it impossible, as well as unnecessary, to undertake an analysis of even a small part of the decisions. Able counsel who have argued this case have seen the futility of attempting a detailed examination of the cases, and have been content to cite the notes in A. L. R., where the cases will be found gathered together.

We shall adopt the same method. See notes to the following cases: Windram Mfg. Co. v. Boston Blacking Co., 17 A. L. R. 669, at page 672; Heckel v. Ford Motor Co., 39 A. L. R. 989, at page 992; Minutilla v. Providence Ice Cream Co., 63 A. L. R. 334, at page 340; Baxter v. Ford Motor Co., 88 A. L. R. 521, at page 527; McSpedon v. Kunz, 105 A. L. R. 1497, at page 1502; supplemental decisions to the foregoing notes appearing in 1936 Supp. to A. L. R. Blue Book. As bearing on the question of presumption of negligence from foreign substances in food, see Fisher v. Washington Coca-Cola Bottling Works, 105 A. L. R. 1034, at page 1039, and supplemental decisions to this note in 1936 A. L. R. Blue Book.

The question has been before this court but once and that in Davis v. Van Camp Packing Co., 189 Iowa 775, 176 N. W. 382, 17 A. L. R. 649. The exhaustive analysis there made of the question by Preston, Justice, and the thorough way in which he discussed the authorities then applicable, make it unnecessary that we should travel over the field again. We have re-examined the question in the light of the cases decided since, and we find no reason for departing from the principle announced in the Davis case. While there is some difference of opinion in the courts of the various jurisdictions, the opinion of Justice Preston so far anticipated the trend of judicial opinion on this question that it

finds abundant support in the majority of cases arising since it was announced.

**▌█▌** The defendants, in the trial of this case, offered testimony minutely describing the process and the precautions under which the Coca-Cola sold to the country club was bottled; and they claim a degree of care which made it appear absolutely impossible that the mouse found in this bottle could have been in it at the time it was sold to the country club. It must be admitted that if the jury believed this testimony they could have found that a high degree of care was exercised by the defendants in bottling this Coca-Cola; nevertheless, the evidence does establish that a mouse was found in the bottle, and that the plaintiff became sick as a result of drinking therefrom. Moreover the jury might have found from the testimony that it was not while the Coca-Cola was in the custody of the country club that this mouse could have gotten into the bottle. The caretaker testified that the cases of this beverage were kept under lock and key, and that no one but himself, his wife, and the helper had access to the place in which this and other beverages were stored preliminary to their being taken to the stand from which they were sold; and it appears, too, that there was no interval of time from the moment of sale until plaintiff started to drink which would permit an inference that the bottle had been tampered with after the sale. In fact, the evidence warranted the conclusion that the bottle was opened and part of its contents drunk in the immediate presence of those in charge of the stand directly after the purchase. Under these circumstances we are compelled to hold, under the authority of the Davis case, supra, that the question was one for the jury.

**▌█▌** Defendants make some complaint about the submission of the case on the question of negligence and of implied warranty. Their contentions are disposed of by the Davis case, supra, where we said (189 Iowa 775, at page 800, 176 N. W. 382, 392, 17 A. L. R. 649) :

''We are of opinion that the duty of a manufacturer to see to it that food products put out by him are wholesome, and the implied warranty that such products are fit for use, run with the sale, and to the public, for the benefit of the consumer, rather than to the wholesaler or retailer, and that the question of privity of contract in sales is not controlling, and does not apply in such a case.

"If we call it a duty to use care in the preparation and manufacture, then, in that sense, a breach of that duty would constitute negligence. Or it may be treated as a representation or a warranty that, because of the sacredness of human life, food products so put out are wholesome. In either event, a failure in this respect is a breach of duty and a breach of warranty, and the plaintiff suing may rely on either or both, and, when he makes a prima-facie case, he is entitled to go to the jury on the question as to whether defendant's evidence negatives plaintiff's prima-facie case. As said in the Boyd case, supra [Boyd v. Coca-Cola Bottling Works, 132 Tenn. 23, 177 S. W. 80]:

" 'Upon whatever ground the liability of such a manufacturer to the ultimate consumer is placed, the result is eminently satisfactory, conducive to the public welfare, and one which we approve.' "

Other complaints are likewise covered by the Davis opinion, but we refrain from extensive quotation therefrom.

■■■ One of defendants' complaints is that, since this Coca-Cola was sold on Sunday, the sale was illegal and therefore carried no warranty express or implied. This contention is disposed of, we think, by the provisions of the Code. Code section 2808, subdivision 5, provides:

" 'Food' shall include any article used by man for food, drink, confectionery, or condiment, or which enters into the composition of the same, whether simple, blended, mixed, or compound."

Code section 13227, with reference to breaches of the Sabbath, provides among other things the following:

"If any person be found on the first day of the week, commonly called Sunday, engaged in * * * buying or selling property of any kind * * * he shall be fined * * *."

We are not disposed to hold that the sale of this beverage under the circumstances disclosed deprived the plaintiff of his right to recover such damages as he may have proven under established rules of law.

■■■ Another complaint made by defendants is that the court erred in receiving advertisements of Coca-Cola appearing in certain well-known magazines. It is said that one or more of the

exhibits of this kind had reference to so-called fountain Coca-Cola, which is mixed at fountains and sold directly in the glass and not from a bottle. It seems difficult to believe that this could be seriously put forward, especially since these advertisements make no other claim than that here put forth by defendants, to wit, that the beverage is wholesome and healthful. Moreover, one of the defendants testified that Coca-Cola was advertised in a large number of national magazines similar to those received in evidence, and that it was advertised more than any other product, and that in all of such advertising were used comments to the effect of the beverage's "wholesome life, sparkle, and purity".

No complaint is made of the instructions given by the court, nor is it claimed that the evidence did not warrant the verdict returned.

Finding no error in the action of the trial court, its judgment should be and it is affirmed.—Affirmed.

Chief Justice and all Justices concur.