## CURBY v. MASTENBROOK.

1. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—EVI-
DENCE.

On appeal from judgment for defendants *non obstante veredicto*
.for plaintiff, the evidence is construed in favor of plaintiff.

2. SALES—USED AUTOMOBILES—DESCRIPTION OF CONDITION.

Statement of dealer in used automobiles upon sale of car to
plaintiff's husband whereby express representation was made
that the car was free from defects, would not be sold if any
defects existed, and giving an additional guarantee of 30 days,
deliberately calculated to induce confidence in the buyer and
promote the sale, cannot be considered mere "puffing" of a
harmless product but a description of condition of material
consideration in the transaction.

3. APPEAL AND ERROR—SALES—ORAL WARRANTY—WRITTEN CON-
TRACT—RECORD.

Argument that an oral warranty as to the condition of a used
car could not exist because of a written contract of sale *held,*
untenable under record in action based on breach of warranty
which does not contain such a paper.

4. TORTS—MISREPRESENTATION OF FACT—BODILY HARM—INTENT—
KNOWLEDGE.

A party who misrepresents a fact is subject to liability for bodily
harm resulting from an act done by another in reliance on the
truth of the statement, if the speaker intends his statement to
induce the action, or should reasonably recognize that it is
likely so to induce it, and if he knows that it is false or that
he has not the knowledge which he professes to have.

5. SALES—CAVEAT EMPTOR—INSPECTION FOR DEFECTS—USED CARS—
MISREPRESENTATIONS—RELIANCE—QUESTION FOR JURY.

While under the rule of *caveat emptor* a buyer of a used auto-
mobile would ordinarily be required to inspect it for defects,
where the seller makes misrepresentations with respect to the
condition of the car intended to be relied on by the buyer,

statements do induce buyer to drive the car while in an imperfect condition and as a result she suffers injury for which, she sues seller, whether or not buyer did rely upon seller's statement *held,* a question for the jury.

6. SAME—DEFECTIVE CONDITION OF USED CAR—QUESTION FOR JURY—EVIDENCE.

In action by buyer of recently purchased used automobile, represented as free from defects and guaranteed for 30 days, against seller for injuries sustained by buyer when wheel came off, evidence *held,* sufficient to enable jury to find injuries resulted from loose condition of the wheel when it left seller's lot, where testimony shows defendant had had wheels removed for painting, that wheel was insufficiently refastened to hub and no evidence of structural defect which would have caused bolts holding wheel to hub to loosen.

7. SAME—USED CAR DEALER—REPRESENTATION WITHOUT KNOWLEDGE OF CONDITION.

A dealer in used automobiles cannot represent a car to be in "perfect condition" where he does not have the knowledge of the condition he professes, without assuming the risk of injuries proximately caused by such misrepresentation.

8. SAME—WIFE AS BUYER OF DEFECTIVE USED CAR—MISREPRESENTATION AS TO CONDITION.

In action for injuries sustained by plaintiff when wheel of used car recently purchased from defendants came off, plaintiff *held,* no stranger to purchase of car where title to car and trailer traded in was held jointly by plaintiff and her husband and misrepresentation upon which action was based, that car was in perfect condition, applied to all cars on defendants' lot was made to plaintiff, although specific car here involved had not been seen by plaintiff prior to occasion when she rode in it and accident occurred.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 5, 1939. (Docket No. 14, Calendar No. 40,248.) Decided June 5, 1939.

Case by Sophie Curby against Ernest Mastenbrook and Frank DeHaan, copartners doing business as E. & F. Motor Sales, for damages for personal injuries sustained when wheel came off a re-

cently purchased used automobile. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Reversed and judgment ordered entered on verdict.

*William J. Balgooyen* and *Frank E. Wetmore,* for plaintiff.

*Joseph T. Riley* and *Robert A. Carr,* for defendants.

Butzel, C. J. Plaintiff Sophie Curby and her husband, Meddie Curby, were the owners of a Ford car, certificate of title to which was held in their joint names. They also owned a trailer jointly. On August 23, 1937, they went together to defendants' place of business in Muskegon, Michigan, with the view of exchanging their car and trailer for a better used car. Defendants conducted a secondhand automobile business on a lot, on the rear of which was a building where repairs were made. Plaintiff and her husband were shown a number of cars. Plaintiff testified that one of the defendants in referring to the cars stated that "they were all in good condition," and that defendants guaranteed them for 30 days. Mr. Curby more specifically testified that defendant DeHaan told him and his wife that their cars were "fully guaranteed for 30 days, and they would not let them out unless they were in perfect condition."

The next evening Mr. Curby returned and decided to make the trade for a Terraplane car which plaintiff had not previously seen. On Wednesday, August 25th, Mr. Curby again came back alone, delivered his Ford car to. defendants, and signed the title to the Terraplane, it being expected that his wife would likewise affix her signature to complete the transaction. He testified that defendants would not

permit him to show the car to his wife without sign-
ing it. The parties went to a finance company and
Mr. Curby signed the required papers himself, in
which he agreed to pay the company $55 before re-
ceiving title to the car from defendants. He told
defendant DeHaan that he was taking the car to
show his wife and if satisfactory to her, he would
return to complete the deal. This was not contra-
dicted.

At about 2:30 in the afternoon, after certain re-
pairs to the brakes of the car had been made, Curby
left the used car lot and drove to Ludington, to
which his wife had gone on business. There he met
plaintiff and together they started back to Muske-
gon. On this return trip, as the car neared Mon-
tague, and while on a hill, the left front wheel came
off, causing plaintiff's husband to lose control of
the car so that it collided with another car and as a
result plaintiff sustained serious injuries. Plaintiff
claimed that the accident was caused because the
wheel was not properly attached to the hub, and
recovered a verdict against both defendants. The
court set the verdict aside and rendered a judgment
*non obstante veredicto* for defendants.

It is only necessary to discuss a few of the ques-
tions raised on appeal, construing the evidence in
plaintiff's favor as on directed verdict. *Yacobian*
v. *Vartanian,* 221 Mich. 25. Our attention is called
to *Bayer* v. *Winton Motor Car Co.,* 194 Mich. 222, in
which we stated that the rule of implied warranty,
which may be regarded as an exception to the gen-
eral doctrine of *caveat emptor,* does not apply to the
purchase and sale of secondhand machinery such as
used cars. However, in the instant case there is
considerable evidence that defendants expressly
represented that the car was free from defects and
would not be sold if any defects existed. An addi-

tional guarantee of 30 days was made. When such statements are deliberately calculated to induce confidence in the buyer and promote the sale, they cannot be considered merely "puffing" of goods to promote sales. Where sellers are describing the condition of chattels so likely, if defective, to occasion injury to life and limb, they should anticipate close scrutiny of their language by the courts. What might be considered mere "puffing" of a perfectly harmless product must be held a distinct representation in the case of an automobile. The condition of the Terraplane was the most material consideration in the entire transaction between the parties, and the words employed by defendants to describe it are clearly within the rule of *Worden* v. *Peck,* 245 Mich. 237. See, also, *Murphy* v. *McGraw,* 74 Mich. 318.

We must also reject defendants' argument, drawn from *Bayer* v. *Winton Motor Car Co., supra,* that an oral warranty could not exist because of a written contract of sale. If such a contract was made it is not revealed by the record. We cannot regard the ambiguous testimony that when Curby went to the finance company, he signed "a paper," in addition to a note, as sufficient proof of a contract between the buyers and sellers which would preclude accompanying parol representations. Such "a paper" was not introduced.

Appellees admitted that only a few days before the sale, the wheels of the car had been removed for painting, apparently by an independent contractor, who did such work for defendants. Nevertheless, without making any inspection of the wheels thereafter, defendants represented that the car was in "perfect condition." Obviously, defendants did not know whether or not the car was in "perfect condition." It has long been established that a party who misrepresents a fact is subject to liability

for bodily harm resulting from an act done by another in reliance on the truth of the statement, if the speaker intends his statement to induce the action, or should reasonably recognize that it is likely so to induce it, and if he knows that it is false or that he has not the knowledge which he professes to have.   See 2 Restatement of the Law, Torts (1934), § 310; *Washington & Berkeley Bridge Co.* v. *Pennsylvania Steel Co.* (C. C. A.), 226 Fed. 169; *Valz* v. *Goodykoontz,* 112 Va. 853 (72 S. E. 730). *Cf. Grinnell* v. *Carbide & Carbon Chemicals Corp.,* 282 Mich. 509; *Baxter* v. *Ford Motor Co.,* 168 Wash. 456 (12 Pac. [2d] 409, 15 Pac. [2d] 1118, 88 A. L. R. 521); and see Harper, Law of Torts (1st Ed.), § 76. While buyers of used cars would ordinarily be required to inspect them for defects, under the rule of *caveat emptor,* there was evidence here sufficient from which a jury could find that the buyers relied on the defendants' statements.   These statements, whether careless or deliberate, induced the buyers to drive the car while in imperfect condition.

There was sufficient evidence to enable the jury to find that plaintiff's ensuing injuries resulted from the loose condition of the wheel when the car left defendants' lot, which could have been discovered by even cursory examination with a suitable instrument.   As we stated in *Trent* v. *Pontiac Transportation Co., Inc.,* 281 Mich. 586 (2 N. C. C. A. [N. S.] 485), it is not usual for a wheel to come off a moving vehicle if proper inspection has been made.   Plaintiff's version of the accident is not that it was caused by a latent defect, or a normal wearing out of the parts or material of the car, but that the wheel had been insufficiently refastened to the hub after it had been removed for painting.   There is a reasonable amount of testimony to support this position.   One witness stated that after the wheel came off he found

three bolts lying within the hub cap and that the threads were only slightly stripped at the ends. Another testified that the threads in the bolt holes on the hub were damaged, all of which might indicate improper attachment. Two bolt holes were jammed at the outer edge so that it would be difficult to "start" a bolt in the bolt holes. This witness found no evidence of any structural defect in the wheel or hub which would have caused the bolts to come out and the wheel to escape had proper fastening been made in the first place. There was testimony that the bolts, being loose, must have "worked" out, causing the wheel to come off. The jury was given an opportunity to inspect the hub to which the wheel had been attached. On the other hand, appellees produced testimony to the effect that if the wheel had been improperly attached to the hub, it would have fallen off before Curby had driven up to Ludington and back to Montague, a distance of more than 100 miles, making many turns and several stops in the course of his journey. However we may be impressed by such considerations, we think that under the circumstances, particularly where defendants admitted that the wheels had been taken from the car only a short time before, and the testimony was quite convincing that the wheel could not have been properly fastened, the question was properly for the jury to determine.

In so deciding, we by no means hold that a used car dealer is an insurer of the cars he sells. We do not hold that he is required to inspect them for latent defects. Nor is it necessary, strictly, to discuss whether he is liable for careless alterations or repairs made to a car, either by himself, his servants, or third persons who have contracted with him. We hold only that a dealer cannot represent a car to be in "perfect condition" where he does not have the

knowledge of the condition which he professes, without assuming the risk of injuries proximately caused by such misrepresentation.  Such decision requires only that if a dealer sells used cars "as is," he should not tell his customers that they are without defects.  See *Supera* v. *Moreland Sales Corp.*, 13 Cal. App. (2d) 186 (56 Pac. [2d] 595); *Jones* v. *Raney Chevrolet Co.*, 213 N. C. 775 (197 S. E. 757), and *cf. Baxter* v. *Ford Motor Co.*, *supra; Flies* v. *Fox Bros. Buick Co.*, 196 Wis. 196 (218 N. W. 855, 60 A. L. R. 357).

The situation here presented does not require that we consider in the instant case the rule laid down in the Restatement of the Law, Torts, pp. 841, 842, § 310, comment c., suggesting that the ambit of liability extends to all persons who are likely to be imperiled by the original misrepresentation.  Plaintiff here was no stranger to the transaction.  She furnished half of the consideration and was a party to the agreement.  The representation was made to her as well as to her husband for purposes of inducing her to trade in the Ford car and trailer in which she held joint interests.  It would not be material that she did not notice the particular Terraplane which her husband finally selected or that she did not see it until her husband called for her at Ludington.  The representation referred to the condition of all cars released from defendants' lot, and applied to the Terraplane in question.

The judgment *non obstante veredicto* is set aside and the case remanded for the trial court to enter judgment in accordance with the verdict.  Plaintiff will recover costs.

WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.