## BAHLMAN v. HUDSON MOTOR CAR CO.

1. AUTOMOBILES—VERDICTS—EVIDENCE—PROXIMATE CAUSE.

   In action by motorist against car manufacturer for injuries sustained in automobile accident, record *held*, to contain ample testimony to sustain jury's verdict for plaintiff that injuries were sustained as a result of plaintiff's head coming in contact with the jagged, metal drippings from welded joint of the top rather than an indentation of the roof when the car overturned.

2. SALES—WARRANTY—AUTOMOBILES—SAFETY STEEL ROOF.

   Automobile manufacturer's representation that roof of its motor cars was particularly safe because made from one piece of steel must be taken to warrant the increased protection of the particular type of roof when the car is suddenly overturned or when some foreign body, as another colliding car, is forced against it, and is not limited to sheer ''acts of God'' or negligence of a third party.

3. SAME—BREACH OF WARRANTY—CONTRIBUTORY NEGLIGENCE.

   In an action for breach of manufacturer's warranty as to the condition of article sold, defendant may not interpose defense of contributory negligence of the ultimate consumer.

4. SAME—BREACH OF EXPRESS WARRANTY—NEGLIGENCE—PROXIMATE CAUSE.

   In action against manufacturer of automobile which was represented as having a seamless, one-piece, steel top, a feature particularly attractive to plaintiff purchaser, a traveling shoe salesman, such representation amounted to an express warranty of quality and construction, and where evidence shows it was false and but for fact that there was a jagged seam where top had been welded plaintiff's injury would not have occurred when his car overturned as a result of his negligence, the chain of proximate cause is *held*, established, since the intervening force of negligence by the customer was readily and reasonably foreseeable; the purpose of such representations not being to avoid an accident but to lessen damages resulting therefrom.

5. SAME — MANUFACTURER'S EXPRESS WARRANTY — NEGLIGENCE — FALSE REPRESENTATIONS—PRIVITY.

> While a manufacturer is required to exercise only ordinary care in the fabrication of his products, and if he is not negligent, he is not liable to a consumer for defects, where he makes an affirmative warranty as to construction or condition, he enlarges his duty beyond that imposed by law and assumes the risk of injuries proximately caused by falsity of such representation as was made notwithstanding there may be no strict contractual privity and such injuries may properly be redressed by action for breach of the warranty.

6. SAME—LIABILITY OF MANUFACTURER FOR BREACH OF EXPRESS WARRANTY.

> In action by ultimate consumer of a product for damages proximately resulting from breach of manufacturer's express warranty as to its construction or condition, it is immaterial whether it is considered that the privity of contract concept is inapplicable because of its historical origins, or that the requirements of privity are satisfied by the commercial advertising and merchandizing methods of defendant, or by finding the dealer the defendant's agent to warrant its products, or by holding that the express warranty is similar to a covenant running with the land and follows the product to the ultimate consumer, or by application of the third party beneficiary statute to the transaction between the defendant and its retail dealer (Act No. 296, Pub. Acts 1937).

7. SAME—MANUFACTURER'S BREACH OF EXPRESS WARRANTY—PERSONAL INJURIES—MEASURE OF DAMAGES.

> In action for damages resulting from manufacturer's breach of express warranty, damages are not assessed under the usual rule of the difference between the value of the article as sold and its value had the warranty been true, but plaintiff is entitled to recover for personal injuries proximately resulting from the breach.

8. DAMAGES—HEAD INJURIES—EXCESSIVE VERDICT—REMITTITUR.

> Verdict of $4,000 for traveling shoe salesman who sustained a 5- or 6-inch cut on the head, was able to drive his car some 50 miles the next day, lost but little time in the conduct of his occupation, carries a scar on his head which is visible at only a short distance now and may become less noticeable with the passage of time, and perhaps has some nervousness traceable

to defendant's breach of warranty as to construction of car sold plaintiff *held*, excessive, and plaintiff is afforded opportunity to remit $2,000 or have a new trial.

9. COSTS—REMITTITUR.

Upon conditional affirmance of verdict and judgment of $4,000 by permitting plaintiff to file remittitur of $2,000 or have reversal with a new trial, costs are allowed defendant.

WIEST, J., dissenting in part.

CHANDLER, J., dissenting.

Appeal from Wayne; Brown (William B.), J., presiding. Submitted June 6, 1939. (Docket No. 9, Calendar No. 40,473.) Decided November 9, 1939.

Case by Henry R. Bahlman against Hudson Motor Car Company, a corporation, for damages for alleged fraud and misrepresentation in the sale of a motor vehicle, alleged negligent construction and alleged violation of express warranty of the sale. Verdict and judgment for plaintiff. Defendant appeals. Affirmed conditionally.

*Walter M. Nelson* and *Dale Souter*, for plaintiff.

*Vandeveer, Vandeveer & Haggerty*, for defendant.

CHANDLER, J. (*dissenting*). For approximately 14 years plaintiff has been employed as a shoe salesman, traversing his allotted territory by means of an automobile. He had purchased several cars manufactured by defendant, including the one in which he was riding when he sustained the injuries for which he seeks damages in this action.

Having been involved in previous accidents, he negotiated for the purchase of a 1936 Hudson sedan with a particular interest in features which would tend to make the vehicle a safe conveyance. He ex-

amined various advertising matter circulated by defendant which included the statement that the bodies of the Hudson cars were constructed as a unit with a top of smooth steel containing no seams or joints. He claims that he relied upon this statement and others contained in defendant's advertising relative to the safety features of its cars in concluding to purchase a 1936 Hudson sedan, and that in making the actual purchase, the salesman for the distributor, the Oakdale Garage of Grand Rapids, emphasized the seamless construction of the top of. the car plaintiff was about to purchase as he was most interested in this feature.

Plaintiff purchased the car in question and for some period of time thereafter used it to transport himself throughout the territory in which his customers were located. About the 10th of December, 1936, he became involved in an accident near the city of Hillsdale which resulted in the injuries of which he now complains. As an immediate result, he sustained a gash over the top of his head, and subsequent examination of the car revealed that this injury had been inflicted by a seam which extended across the top of the car, presenting a rough and jagged edge, saw-tooth in appearance, averaging approximately from one eighth to three fourths of an inch in thickness, the same being caused by the top of the car being constructed of two pieces of metal welded together. The condition was not visible to a purchaser of the completed car.

The declaration contains three counts. Count one alleges that by means of deceit, fraud and misrepresentations, plaintiff was induced to purchase the automobile, and that by reason thereof he has sustained damages. Count two charges defendant with negligence in the construction of the vehicle, and count three is based upon an alleged express warranty and breach thereof by defendant.

Defendant moved for a directed verdict, for judgment *non obstante veredicto,* and for a new trial, all of which were denied and judgment was entered for plaintiff in the sum of $4,000. Defendant has appealed.

Many cases are cited bearing upon the question as to the liability of a manufacturer for injuries resulting to a third party, the ultimate consumer, from a defect in the article manufactured, the injured third party being a purchaser who has had no contractual relations with the manufacturer. Exhaustive annotations bearing upon various issues arising in cases of this type are to be found collected in the annotations in 19 L. R. A. (N. S.) 923; 17 A. L. R. 672; 39 A. L. R. 992; 63 A. L. R. 340; 88 A. L. R. 527; 105 A. L. R. 1502; and 111 A. L. R. 1239.

We find it unnecessary, however, to enter into an extended discussion concerning the underlying legal theory involved in such cases.

To recover on the count in negligence it was incumbent upon plaintiff to show that his injuries were the natural and probable consequence of defendant's negligence as charged. Similarly, as to the counts resting on fraud and deceit and breach of warranty, he was obligated to establish that his injuries were the natural and probable consequence of defendant's wrong and reasonably within the contemplation of the parties at the time the car was purchased.

The record establishes beyond peradventure that the accident in which plaintiff was injured was caused solely by the negligent manner in which he was operating the vehicle at the time and place in question. If we assume, therefore, that defendant was negligent in the manufacture of the car, liability for the injuries cannot be foisted upon it, for if plaintiff had been operating his car in a proper manner, the injuries would not have been sustained.

Likewise, as to the count alleging breach of war-
ranty, it cannot be said that these injuries were the
necessary and natural result flowing from the breach
or within the contemplation of the parties at the
time of sale, proof thereof being essential to recov-
ery. *Greco* v. *S. S. Kresge Co.*, 277 N. Y. 26 (12
N. E. [2d] 557, 115 A. L. R. 1020).

Based upon fraud and deceit, plaintiff's recover-
able damages, not sought in this action, would be the
difference between the value of the car as purchased
and the value it would have had had it been as repre-
sented. *Gloeser* v. *Moore*, 284 Mich. 106. At the
most, plaintiff's injuries were a remote consequence
of the fraud, the proximate cause thereof being his
negligence, and this is true even though we accept
his claim that the fraudulent representations in part
induced him to purchase this particular car, despite
the fact that prior thereto he had purchased nine
consecutive cars manufactured by defendant.

See *Rachlin* v. *Libby-Owens-Ford Glass Co.* (C. C.
A.), 96 Fed. (2d) 597.

Plaintiff having shown no damages which he was
entitled to recover in this action, the judgment should
be reversed, without a new trial, with costs to de-
fendant.

Butzel, C. J. I am not in accord with the fore-
going opinion. Plaintiff, as a traveling shoe sales-
man, was in the habit of driving his car 30,000 or
more miles during a single year. Previous to the
accident which gives rise to this litigation, he had
an automobile accident in 1935 and two more acci-
dents in 1936. Plaintiff testified that through news-
paper advertising he became particularly aware of
new safety features which had been developed in the
automotive industry, and was interested in purchas-
ing a car which had a "safety top," and that he and

a salesman of the Oakdale Garage, an authorized distributor of defendant's cars, discussed the construction of the top of the car at some length and that on the strength of the assurances made to him, plaintiff finally agreed to purchase a 1936 model Hudson eight sedan. In the course of the demonstration, plaintiff was shown various pieces of literature descriptive of defendant's products, which it had printed and caused to be distributed to its dealers for exhibition to the public. In this printed matter the Hudson car was described as "A Rugged Fortress of Safety," with the following attributes:

"Beneath the bigness and beauty, the safest car on today's highway, with the world's first safety engineering. Safeness combined with the first bodies all of steel; bodies introduced last year by Hudson's and now brought to new heights of strength and beauty with an improved seamless steel roof."

In another pamphlet it was stated:

"How, What, Why about the 1936 Hudsons and Terraplanes. A steel top which is a smooth, solid unit with the body shell. There are no seams or joints in the roof and body structure, just a complete steel body made from a single sheet of steel."

As a matter of fact, the roof was not solid and seamless, but consisted of two pieces of steel which had been welded together at a line approximately above the driver's seat. From the weld, jagged metal drippings hung down all along the seam. The masonite lining, with which the under portion of the roof was finished and covered, fell off as a result of the accident, thus allowing plaintiff's head to strike the jagged edges of the seam. It was defendant's theory that plaintiff's injuries were produced by indentation or "stoving in" of the roof when the car overturned, and that the presence of the seam

did not cause the laceration of plaintiff's scalp. By its verdict the jury found otherwise. There is ample testimony to support that finding.

There can be no doubt that if plaintiff was entitled to rely on them, defendant's representations amounted to express warranties of quality and construction. *Curby* v. *Mastenbrook*, 288 Mich. 676. Likewise, there is no doubt that the representations were false. Inquiry into the foundations of defendant's alleged liability is dismissed by the foregoing opinion on the theory that plaintiff's injuries were not the "natural and probable consequences of defendant's wrong and reasonably within the contemplation of the parties." I agree that the scope of the warranty and the proximate cause of plaintiff's injuries must be determined, but on both questions I feel forced to differ in result from Mr. Justice CHANDLER.

Defendant represented that the roof of its motor cars was particularly safe because made from one piece of steel. So far as appears in the record or common experience, the construction of the top of an automobile, whether it is of one or many steel sections, does not ordinarily affect the safety of the purchaser or others riding in a car under the normal conditions of travel. It is not suggested that welds in the roof would make the occupants of an automobile either more or less susceptible to injury from bumps or defects in the highway, lightning, hail, or other natural forces. There was testimony that the condition of the roof does not in the slightest degree affect the driving of the car or its efficiency in accelerating or stopping. Barring the most unpredictable eventualities, the only time that the strength and construction of the roof assume importance is when the car is overturned. Then an all-steel roof of solid construction may prevent injuries which

formerly occurred when the tops of automobiles were fashioned from individual sections of wood or wood and metal and thus were easily demolished. The safety of an automobile roof is thus tested after an untoward accident of some sort has taken place. If defendant's representations are to be given any meaning at all, they must be taken to warrant the increased protection of the particular type roof when the car is suddenly overturned, or when some foreign body, as another colliding car, is forced against it.

If this is true, I cannot believe that defendant attempted to distinguish in its representations between accidents involving negligence of the purchaser or some other person and accidents occurring without any negligence. In common experience automobiles do not ordinarily overturn unless somebody has failed to use due care. There is absolutely no evidence that defendant sought to limit its responsibility to sheer "acts of God" where the car was upset without any human fault or through the negligence of a third party. Certainly, a prospective purchaser of the car would never have acceded to such a limitation.

As I read it, the opinion of Mr. Justice CHANDLER, in effect, introduces the defense of contributory negligence into an action for breach of warranty, a procedure for which there is neither reason nor authority. See *Challis* v. *Hartloff,* 136 Kan. 823 (18 Pac. [2d] 199). Under such rule, although a manufacturer had falsely advertised that a windshield was made of shatterproof glass, as in the now famous case of *Baxter* v. *Ford Motor Co.,* 168 Wash. 456 (12 Pac. [2d] 409, 15 Pac. [2d] 1118, 88 A. L. R. 521), he would be allowed to escape the consequences of that deliberate misrepresentation because the plaintiff was exceeding the speed limit when a peb-

ble flew up and shattered the glass. I find nothing in *Greco* v. *S. S. Kresge Co.*, 277 N. Y. 26 (12 N. E. [2d] 557, 115 A. L. R. 1020), cited in the foregoing opinion, even remotely compelling such a conclusion.

It is, of course, true that the breach of warranty must have been proximately responsible for the damages for which he sues. Obviously anticipating that his car might turn over, plaintiff purchased a Hudson car on the assurance that it had a unisteel top. Plaintiff drove his car in that belief, and, while so driving, the car overturned. The impact broke the protective masonite layer of the roof, exposing the jagged edges of the seam which had been warranted not to exist. Plaintiff's head was thrown against this seam and injured. In my opinion the chain of proximate cause was strikingly established. See *Baxter* v. *Ford Motor Co., supra.* If the representations had been true, there would have been no welded seam, no jagged edges, no consequent cutting of plaintiff's scalp. "But for" defendant's breach, the injury would not have occurred. See *Camp* v. *Wilson,* 258 Mich. 38. It is undoubtedly true that the negligence of the driver caused the car to overturn, but defendant's representations were not for the purpose of avoiding an accident but in order to avoid or lessen the serious damages that might result therefrom. The intervening force of negligence by a customer was readily and reasonably foreseeable. See *Morrison* v. *City of Ironwood,* 189 Mich. 117; *Anderson* v. *Newport Mining Co.,* 202 Mich. 204; also, Feezer, "Manufacturer's Liability for Injuries Caused by his Products: Defective Automobiles," 37 Michigan Law Review, pp. 1, 19–23. The particular construction of the roof of defendant's cars was represented as protection against the consequences of just such careless driving as actually took place. Once the anticipated overturning of the car

did occur, it would be illogical to excuse defendant from responsibility for these very consequences. See Green, "Are There Dependable Rules of Causation?" 77 University of Pennsylvania Law Review, pp. 601, 623–625.

The liability which underlies the above discussion is for breach of warranty. Plaintiff's recovery in the court below seems to have been based on the doctrine of *Baxter* v. *Ford Motor Co., supra,* and defendant itself has cited the case with apparent approval in its brief. For this reason it is unnecessary to discuss at great length the principles there announced. The case has been widely approved by current writers. 46 Harvard Law Review, p. 161; 18 Cornell Law Quarterly, p. 445; Feezer, "Manufacturer's Liability for Injuries Caused by his Products: Defective Automobiles," 37 Michigan Law Review, p. 1; Jeanblanc, "Manufacturers' Liability to Persons Other than their Immediate Vendees," 24 Virginia Law Review, p. 134. It is true that it was not followed by the court of appeals for the second circuit in *Rachlin* v. *Libby-Owens-Ford Glass Co.* (C. C. A.), 96 Fed. (2d) 597, upon which Mr. Justice CHANDLER relies, although Judge Swan there took occasion to remark that it had received favorable comment in the law magazines. The action of the Federal court is readily explained by the fact that the case demanded application of the law of New Jersey which has not yet adopted the rule; furthermore, the rule, as stated by the court, was inapplicable to the facts presented because no breach of warranty had been made out. On the other hand, the principles of the *Baxter Case* have been enforced in many recent decisions, including *Eisenbeiss* v. *Payne,* 42 Ariz. 262 (25 Pac. [2d] 162); *Anderson* v. *Tyler,* 223 Iowa, 1033 (274 N. W. 48); *Madouros* v. *Kansas City Coca-Cola Bottling Co.,*

230 Mo. App. 275 (90 S. W. [2d] 445); *Nemela* v. *Coca-Cola Bottling Co. of St. Louis* (Mo. App.), 104 S. W. (2d) 773; *McSpedon* v. *Kunz*, 271 N. Y. 131 (2 N. E. [2d] 513, 105 A. L. R. 1497); *Coca-Cola Bottling Co.* v. *Smith* (Tex. Civ. App.), '97 S. W. (2d) 761. See, also, the earlier cases on *Dothan Chero-Cola Bottling Co.* v. *Weeks*, 16 Ala. App. 639 (80 South. 734); *Davis* v. *Van Camp Packing Co.*, 189 Iowa, 775 (176 N. W. 382, 17 A. L. R. 649); *Challis* v. *Hartloff, supra; Cudahy Packing Co.* v. *Baskin*, 170 Miss. 834 (155 South. 217); *Coca-Cola Bottling Works of Greenwood* v. *Simpson*, 158 Miss. 390 (130 South. 479, 72 A. L. R. 143); *Mazetti* v. *Armour & Co.*, 75 Wash. 622 (135 Pac. 633, 48 L. R. A. [N. S.] 213, Ann. Cas. 1915C, 140); and the concurring opinion of Justice Kenna in *Webb* v. *Brown & Williamson Tobacco Co.*, 121 W. Va. — (2 S. E. [2d] 898).

This court itself has recognized that certain warranty actions may be sustained although the parties are not in a position of strict contractual privity. *Hertzler* v. *Manshum*, 228 Mich. 416. Defendant, while not challenging the rule of this and the *Baxter Case*, has sought to give it an unjustified interpretation. It is not true, as defendant seems to believe, that the *Baxter Case* is a simple equivalent to *Mac-Pherson* v. *Buick Motor Car Co.*, 217 N. Y. 382 (111 N. E. 1050, L. R. A. 1916 F, 696, Ann. Cas. 1916 C, 440). Recovery was allowed by the Washington court, not on any principle of negligence, but on the theory that a consumer may sue a manufacturer for deliberate false statements made to induce purchase of the product by the consumer. It was said:

"Since the rule of *caveat emptor* was first formulated, vast changes have taken place in the economic structures of the English-speaking peoples. Methods of doing business have undergone a great transition. Radio, billboards, and the products of

the printing press have become the means of creating a large part of the demand that causes goods to depart from factories to the ultimate consumer. It would be unjust to recognize a rule that would permit manufacturers of goods to create a demand for their products by representing that they possess qualities which they, in fact, do not possess, and then, because there is no privity of contract existing between the consumer and the manufacturer, deny the consumer the right to recover if damages result from the absence of those qualities, when such absence is not readily noticeable.''

The language of Mr. Justice WIEST in *Hertzler* v. *Manshum, supra,* referring to negligence as the real basis of liability where suit is on an implied warranty of quality, does not mean, of course, that a manufacturer cannot be liable for express misrepresentations he has made. A seller of a used automobile is not generally under a duty to inspect or recondition the car he sells, but he is liable for the consequences of his intentional misrepresentation of the condition of the car. *Curby* v. *Mastenbrook, supra.* In the same way, a manufacturer is required to exercise only ordinary care in the fabrication of his products; if he is not negligent, he is not liable to a consumer for defects. But by making affirmative warranties, he has enlarged his duty beyond that imposed by law, and assumes ''the risk of injuries proximately caused by such misrepresentation.'' *Curby* v. *Mastenbrook, supra,* at 683. Such injuries may properly be redressed by action for breach of the warranty, and *Hertzler* v. *Manshum, supra,* and succeeding cases which have reiterated the rule there expressed, cannot be taken to have destroyed this right to relief.

The rules of liability above set forth are properly applicable to the situation disclosed in the case at

bar. Whether the result reached is best justified by holding the privity concept inapplicable because of its historical origins (see Williston, Sales [2d Ed.], § 237) ; or that the requirements of privity are satisfied by the commercial advertising and merchandising methods of defendant (see *Madouros* v. *Kansas City Coca-Cola Bottling Co., supra;* 9 Cornell Law Quarterly, p. 445) ; or by finding the dealer under the circumstances defendant's agent to warrant its products, *cf. Grinnell* v. *Carbide & Carbon Chemicals Corp.,* 282 Mich. 509 ; or by holding that the express warranty is similar to a covenant running with the land and follows the product to the ultimate consumer (see *Davis* v. *Van Camp Packing Co., supra; Anderson* v. *Tyler, supra*) ; or by application of the third party beneficiary statute * to the transaction between defendant and its retail dealer (see *Ward Baking Co.* v. *Trizzino,* 27 Ohio App. 475 (161 N. E. 557), we have no occasion to decide. It is sufficient to state that the liability most recently restated in *Curby* v. *Mastenbrook, supra,* is imposed on the maker of false statements and may be enforced by the ultimate consumer of the product to whom the statements are directed.

Plaintiff, who is 50 years of age, recovered judgment for $4,000. The sole injury he sustained as a result of the accident was a cut on the head, five or six inches long. Although 13 sutures were necessary to close the wound, it was only the blood dripping from his scalp that first gave plaintiff any indication after the accident that he had been cut. He was "pretty groggy," was helped out of his car as he reached to open the door, but he was treated by a physician with only a local anaesthetic and shortly

---

* See Act No. 296, Pub. Acts 1937 (Comp. Laws Supp. 1937, § 14063-1 *et seq.,* Stat. Ann. 1939 Cum. Supp. § 26.1231 *et seq.*).— REPORTER.

thereafter was able to walk to the garage to inspect his car. Cleaning and dressing the wound required about 30 minutes. Plaintiff spent the night in a hotel at Hillsdale and the next morning drove his car to Battle Creek, a distance of approximately 50 miles. Although plaintiff did not call upon the shoe trade frequently during the next fortnight, during which time he claims to have been convalescing, this appears to have been caused more by the fact that it was just before Christmas, which plaintiff testified was a very unpropitious time for interviewing retail merchants.

Plaintiff carries a scar on his head which is visible at only a short distance. It was definitely minimized by the trial judge in his observations denying defendant's motion for a new trial. The scar will become less noticeable with the passage of time unless plaintiff's baldness should increase. It is difficult to determine how much of the nervousness which plaintiff claims has developed following the accident can be traced to it. In cases of this kind the damages for breach of warranty are not assessed under the usual rule of the difference between the value of the article as sold and its value had the warranty been true. Plaintiff is entitled to recover for personal injuries proximately resulting from the breach. *Curby* v. *Mastenbrook, supra; Nemela* v. *Coca-Cola Bottling Co. of St. Louis, supra;* Williston, Sales (2d Ed.), §§ 614–614a. I think, however, that the verdict was excessive under all the facts disclosed by the testimony. If plaintiff will consent to a remittitur within 20 days so as to reduce the judgment to $2,000, the judgment should stand; otherwise, a new trial is ordered. Defendant will recover costs.

BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred with BUTZEL, C. J.

WIEST, J. (*concurring in part*).    I concur in the opinion of Mr. Chief Justice BUTZEL relative to liability but, the damages being so excessive, I think there should be a new trial ordered for reasons set forth in my opinion in *Hartough* v. *Safeway Lines, Inc.*, 288 Mich. 703, handed down herewith.