Sylvester HANSEN, Appellant,

v.

FIRESTONE TIRE AND RUBBER COMPANY, Appellee.

No. 13816.

United States Court of Appeals
Sixth Circuit.

March 2, 1960.

William J. Weinstein, Detroit, Mich. (Charfoos, Gussin, Weinstein & Kroll, Detroit, Mich., on the brief), for appellant.

Rockwell T. Gust, Detroit, Mich. (Butzel, Eaman, Long, Gust & Kennedy, Detroit, Mich., Henry S. Brainard, Akron, Ohio, of counsel), for appellee.

Before McALLISTER, Chief Judge, and MARTIN and CECIL, Circuit Judges.

MARTIN, Circuit Judge.

In this action for damages involving personal injuries and property damage, the jury returned a verdict for plaintiff in the amount of $8,000. Some six months later, the United States District Court entered judgment for the defendant, *non obstante veredicto*. On this appeal, the plaintiff urges that the judgment of the trial court be set aside and that a judgment in his favor be entered on the verdict of the jury.

The action of the plaintiff was based upon the alleged negligence of employees of the defendant company in mounting tires on his automobile and, further, upon the alleged breach of express and implied warranties in relation to the tires. At the close of defendant's evidence, the plaintiff elected to rely entirely on the breach of warranty counts of his complaint and abandoned the negligence count.

The district court held that the plaintiff had alleged breach of warranty and negligence; that he had attempted to establish his case by proof of over-lubrication and under-inflation of the tires by the defendant's employees, these acts constituting alleged negligence, and that plaintiff-appellant had then dropped his negligence count. The court reasoned that, in this situation, the only breach of warranty was that of the negligent actions of defendant's employees; and that, inasmuch as no negligence was charged, proof of negligent acts could not support the claim of breach of warranty after the negligence count was abandoned. On these considerations, judgment for defendant *non obstante veredicto* was entered by the United States District Judge.

Where the trial court has granted a directed verdict under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., the appellate court may, in an appropriate case where there is sufficient substantial evidence to support a jury verdict to the contrary, order the cause to be remanded with instructions to reinstate the verdict of the jury.

Applying these principles, we find that on July 29, 1953, plaintiff-appellant bought from a Firestone retail outlet in Detroit four new tires manufactured by Firestone Tire and Rubber Company. He paid $303.84 for the four tires, which were "Firestone Supremes". These tubeless tires (then new) contained no innertubes, but instead utilized the inside of each rim as part of the air chamber. Within the tire was a rubber "safety diaphram" described by defendant-appellee in an advertising brochure given to appellant by a Firestone salesman as an "emergency tire that holds large volume of air in case of blowout", with a "safety valve" in the diaphram that "closes instantly in case of a blowout."

The rims ("safety-hump" type) on appellant's Chrysler car had been neither manufactured, nor used previously, for tubeless tires. The brochure given to appellant by Firestone proclaimed that the new tires had been made to "fit present rims" and to "fit any standard rim"; and that they would remain "airtight". In mounting the tires on the Chrysler, an "airtight valve" with a "rubber seal" was inserted in each rim by Firestone employees, in compliance with terms of the sales contract. This "airtight valve" was a valve stem into which air could be inserted and corresponded to the air-valve stem on an ordinary innertube. The brochure advertised that an "airtight seal" was formed where the tires were seated against the rim flanges on each side of the rim.

According to his testimony, the appellant, in buying the four tires, relied upon the claims made in the advertisement. The brochure characterized Firestone Supreme tires as "safe enough to control one or two tons * * * at speeds up to 80 miles an hour * * * safe enough to cling to the road on dangerous curves"; as having a lining that "holds air longer than ordinary tubes" and as having "greater road stability at any speed." It was stated further that Supreme tires hug the highway and that they provide "greater corner power, more control, more safety."

It appears that the employees of appellee experienced some difficulty in mounting and inflating the tires and in getting the bead of the tire to rest flush against the rim flange. A vegetable oil compound was brushed on the tires many times, so that they could be forced over the rims. During the week following purchase and installation of the tires, appellant Hansen noticed some vibration in his steering wheel; and, when an automobile dealer was unable to balance the new tires, Hansen returned to the Firestone store. There, it was found that the diaphram in the left front tire was "broken, lumped together and balled up." The employees of Firestone replaced this diaphram with a new one and, with some difficulty, again mounted and inflated the tire.

Twelve days after the replacement of the diaphram, on the morning of August 18, 1953, the appellant left Detroit to drive his car to South Dakota for a vacation trip. As he drove around a sharp curve, turning off the highway to go into Jackson, Michigan, he said that he felt "the back of the car fall away on the right side" and that it "sort of moved to the right", as if it had developed a blowout or flat tire.

Hansen testified: "I heard something strike pavement and there was a—it went down and then, stopped or jerked, as though you hit something. * * * it felt as though you were riding on the rim, or bouncing on the rim. * * * The car at that time, of course, moved even farther to the left, and as I tried to straighten it out to the right again, to get more or less back on the curve, so to speak, at about the same instant, * * * the right front wheel fell away * * *." He said that the car "dropped" and felt as if "the right springs, or the tire blew out, or something of that nature * * *." Appellant added that "it felt as though it dropped down and caught, and that's when the car rolled." He did not know how many times the car rolled, but he does remember his fall-

ing against the door and sliding in the seat as he attempted to grab it as the car went over: then, he remembers nothing until he regained consciousness in the hospital.

When examined after the accident, the two tires on the right side of the car were found not to be in contact with the outside walls of the rims; they were deflated, with the vegetable compound running out of the tires where they had pulled away from the rims. The tires themselves were not broken, torn, or ripped open.

█ Originally, at common law, an action grounded on breach of warranty sounded in tort, as a species of fraud or deceit, rather than in contract. Now, in enforcement of the sales contract itself, a buyer may recover for the damages proximately caused by the seller's breach of warranty relating to the goods. The legal relationship between the parties arises from their contract and is distinguishable from tort obligations and remedies.

In its Uniform Sales Act definition of an express warranty, Michigan thus adheres to the common law: "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon." Michigan Statutes Annotated (1959), sec. 19.252, Comp.Laws 1948, § 440.12.

█ No specific intent to warrant need be shown, if the statements made would lead a reasonable buyer to believe that such statements had been made to induce the bargain. Nor does the seller need to use the word "warrant", if the natural import of his words is to imply a warranty with respect to the goods sold.

█ Breach of an express warranty exposes the warrantor to absolute liability for the ensuing consequential damages. The seller has bound himself unqualifiedly as to the existence of the characteristics or qualities warranted; and absolute liability against the warrantor is available to the buyer who is injured by the non-existence of such characteristics or qualities.

In allowing recovery for damages to a plaintiff's hair, when a home-permanent set which she had bought and used in reliance upon the manufacturer's advertisements of safety caused her hair to fall out, the Ohio Supreme Court said recently: "Surely under modern merchandising practices the manufacturer owes a very real obligation toward those who consume or use his products. The warranties made by the manufacturer in his advertisements and by the labels on his products are inducements to the ultimate consumers, and the manufacturer ought to be held to strict accountability to any consumer who buys the product in reliance on such representations and later suffers injury because the product proves to be defective or deleterious." Rogers v. Toni Home Permanent Co., 1959, 167 Ohio St. 244, 147 N.E.2d 612, 615.

Michigan cases follow the rationale of the Ohio case just discussed.

In Bahlman v. Hudson Motor Car Co., 290 Mich. 683, 695, 288 N.W. 309, 313, it was said: "A manufacturer is required to exercise only ordinary care in the fabrication of his products; if he is not negligent, he is not liable to a consumer for defects. But by making affirmative warranties, he has enlarged his duty beyond that imposed by law, and assumes 'the risk of injuries proximately caused by such misrepresentation.'" But the seller's liability does not depend only upon defects of which he knows. See Curby v. Mastenbrook, 288 Mich. 676, 286 N.W. 123.

The plaintiff in the Bahlman case had purchased a new Hudson automobile, in reliance upon the warranty that it was made with "a steel top which is a smooth, solid unit with the body shell." It was also warranted that "there are no seams or joints in the roof and body structure, just as a complete steel body made from a single sheet of steel"; but,

actually, the roof was made from two pieces of steel welded together, leaving jagged metal drippings hanging down over the driver's head. The plaintiff was injured by the sharp metal seam, when his car overturned. He was allowed to recover from the manufacturer on breach of warranty as to the condition of the car.

■ Negligence on the part of the buyer would not operate as a defense to the breach of warranty. If the manufacturer chooses to extend the scope of his liability by certifying certain qualities as existent, the negligent acts of the buyer, bringing about the revelation that the qualities do not exist, would not defeat recovery. As Justice Butzel said in the Bahlman case, there is neither "reason nor authority" for introducing the defense of contributory negligence into an action for breach of warranty. The particular qualities of the Firestone Supreme tires set out in the brochure were represented as protection against just such an accident as actually occurred here. The jury evidently found that the tires failed to possess the merits advertised, in that they did not conduct Hansen's automobile safely around a dangerous curve. Here, Firestone, the manufacturer, sold its product under warranty directly to the appellant consumer. Hence, the legal barrier of lack of privity between manufacturer and ultimate consumer is not present to defeat recovery.

■ In an action of the present character, the burden of proof resting upon the plaintiff entails merely demonstration that the goods did not have the properties warranted. In the absence of controverting evidence adduced by the defendant, which convinces the jury that the goods were as warranted, plaintiff should prevail. Hertzler v. Manshum, 228 Mich. 416, 200 N.W. 155. The plaintiff is not required to show the technical causation of the goods' failure to match their warranty. Nor is it necessary that the manufacturer's negligence be shown as the cause of such failure.

A situation not unlike the present one arose in Senter v. B. F. Goodrich Co., D.C.Colo., 127 F.Supp. 705, 707, 708, where the plaintiff was injured as a passenger in his own car when a tubeless tire manufactured by the defendant Goodrich Company blew out. Plaintiff sought recovery under two separate theories: in tort (for negligent manufacture of the tire); and in contract (for breach of warranty). The trial judge in that case did not compel the plaintiff to elect and rely upon one of those two "consistent, concurrent or cumulative theories." He stated that the "facts pertaining to the purchase of the tire in question, the tire's use and conditions immediately surrounding the blow-out were subject to the same proof under each theory." However, sufficient proof was found to allow recovery on only the breach of warranty claim. The express warranty was found to be a Goodrich salesman's positive representation of fact to the plaintiff that the tires would not "blow out". At the time the plaintiff bought the tires, the national advertising of Goodrich did not make this claim; but the sales agent's express warranty of a blow-out-proof tire, which induced the plaintiff to make his purchase, subjected the company to liability.

Ein v. Goodyear Tire & Rubber Co., D.C.Ind., 173 F.Supp. 497, 498, 499, was an action for wrongful death and for injuries to other passengers in an automobile at the time a Goodyear tubeless tire on the decedent's car blew out. The complaint alleged negligence, in the failure of the manufacturer to warn of the greater susceptibility of tubeless tires to blow out, when bruised. The claim was found to have no merit. Breach of "written and implied warranties" was also alleged; but, inasmuch as no warranties were set out, the complaint was dismissed. The trial judge granted leave to amend, however, recognizing that if "a manufacturer expressly warrants that tubeless tires are as safe as tube type tires and that representation is proved false, the manufacturer may be liable for a breach of warranty." The

judge cited Senter v. B. F. Goodrich Co., D.C., 127 F.Supp. 705, supra.

▮▮ Assuming that appellant's testimony is true, as we must for purposes of reviewing the judgment sustaining the defendant's motion, there is ample evidence based on breach of express warranty to support the verdict of the jury. Hansen testified that the advertising brochure induced him to buy the tires; that he bought in reliance upon the truth of the representations; and that the warranties proved to be untrue to his immediate harm. There is no indication in the record that he was not justified in his reliance upon statements concerning the tires. Nor is it shown that the absence of the qualities warranted was readily discoverable upon examination of the tires by a normally experienced and prudent person.

Section 19.309 of Michigan Statutes Annotated, 1959, Comp.Laws 1948, § 440.69, provides: "(1) Where there is a breach of warranty by the seller, the buyer may, at his election: * * * (b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty. * * * (6) The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty."

These provisions are mere codifications of the common law. They set out the theory under which Hansen brought his suit and upon which he was awarded a verdict by the jury.

We find upon this record that the injuries and losses suffered by the appellant were proximately caused by breach of express warranty upon the part of the appellee. The warranties given covered completely the type of losses and injuries sustained. See Dvoracek v. Goldstein, 311 Mich. 680, 19 N.W.2d 333.

The judgment of the district court, granting the defendant-appellee's motion to set aside the verdict in favor of plaintiff-appellant and to enter judgment in accordance with appellee's motion for directed verdict, is reversed; and the verdict of the jury is ordered to be reinstated and judgment entered thereon.